UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JUN 14 P 2: 26

| | |
|---|---|
| LEONYER M. RICHARDSON<br>    Plaintiff | Civil No. 3:02CV0625(AVC) |
| vs. | |
| STATE OF CONNECTICUT<br>COMMISSION ON HUMAN RIGHTS,<br>OFFICE OF POLICY AND<br>MANAGEMENT, CFEPE-AFT,<br>AFL-CIO, ET AL.<br>    Defendants | JUNE 7, 2004 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

#### I.   Introduction

This lawsuit is the latest in a long line of frivolous employment discrimination complaints, grievances, and other actions which this plaintiff has filed during the past ten years with EEOC, CHRO, her union, the Auditors of Public Accounts, and now the federal court. (Facts, ¶¶ 45, 55, 73, 82-84, 87-88, 89, 91, 93). Over many years of her employment with several different agencies of the State of Connecticut, this plaintiff has exhibited a consistent pattern of misbehavior, including but not limited to: insubordination, workplace violence, and poor work performance, etc. (Facts, ¶¶ 4-72). Her responses to criticism for this behavior have also been consistent, namely, that she is never wrong, that errors are always someone else's fault, that people are out to get her, and that she is constantly victimized by race discrimination and retaliation for filing discrimination complaints. (Facts ¶ 95). No merit has ever been found in any of her complaints, and there is no merit in this federal lawsuit either.

1

The record shows that the State of Connecticut and its employees who have endured the misfortune of having to supervise the plaintiff, have shown remarkable patience with her constant misbehavior and insubordination. (Facts, ¶ 96). The only mistake that the CHRO made with this plaintiff has been to give her multiple chances to reform her behavior by transferring her from one agency to another with the hope that a new start would help her to change. Finally CHRO Executive Director Cynthia Watts Elder (herself an African American female who tried to help by facilitating Plaintiff's transfer to OPM and then to CHRO), had no choice but to fire her. (Facts, ¶¶ 19-72). Predictably but ironically, the plaintiff's response has been to sue defendant Watts-Elder in this case for race discrimination and retaliation.

After the plaintiff finished her employment as a drill sergeant in the Army, she began her state employment with the Dept. of Environmental Protection ("DEP"), where she was suspended for misbehavior in 1997. (Facts, ¶¶ 2, 5). She was able to transfer that year from DEP to the Office of Policy and Management ("OPM") with the help of defendant Watts Elder, who had known her as an acquaintance when she (Watts Elder) worked at DEP. Watts Elder was unaware of Richardson behavior at DEP and gave her a reference for the OPM position. (Facts, ¶ 10). As soon as the plaintiff arrived at OPM, her misbehavior began again in earnest, and so did her claims of race discrimination and a hate crime. In response to her allegations OPM put a concealed video camera in her office, which showed NO evidence of a hate crime. (Facts, ¶¶ 14-16).

In the Spring of 1999, Watts Elder transferred from OPM to become Executive Director of the CHRO. (Facts, ¶ 6). During the summer of 2000, Watts Elder learned of the plaintiff's misbehaviors at OPM and, largely because she felt guilty and embarrassed

2

about having helped convince OPM to take the plaintiff in a transfer from DEP, Watts Elder agreed to give the plaintiff a third chance. (Facts, ¶¶ 17-19). Watts Elder facilitated plaintiff's transfer from OPM to CHRO on October 6, 2000, as a fiscal administrative officer (FAO), a position in which plaintiff reported directly to CHRO Business Manager Leanne Appleton. (Facts ¶ 20). Appleton (herself a defendant herein) reported directly to Watts Elder. Almost immediately after she began working at CHRO, the plaintiff began exhibiting the same, and sometimes worse, misbehaviors towards Appleton which had resulted in her having to leave DEP and OPM. (Facts, ¶ 23). Specifically, the plaintiff (among other things) made changes to CHRO business records without consulting Appleton, violated security policy by using another employee's computer, contacted other state agencies without prior consent from Appleton, hung up on Appleton during telephone calls, sent a multitude of insubordinate and inappropriate e-mails to Appleton, aggravated her co-workers, and sent a rude note to Appleton concerning her time card (after Appleton caught her error in charging time off). Worst of all, she engaged in workplace violence which frightened Appleton and her co-workers. (Facts, ¶¶ 24-72). Throughout this ordeal with the plaintiff, both Appleton and Watts Elder demonstrated remarkable patience and professionalism by making every conceivable effort to correct the plaintiff's misbehaviors by counseling her informally and formally, and then by engaging in progressive discipline which followed both the spirit and the letter of the law and the plaintiff's union contract. (Facts, ¶ 97). In fact, Appleton and Watts Elder went above and beyond the limited personnel requirements by hiring an independent personnel investigator to investigate the entire situation. (Facts, ¶ 35). The investigator, Ms. Herbetia Williams, reported directly to Watts Elder in writing

3

that plaintiff's misbehavior was indeed serious and required discipline up to and including dismissal. (Facts, ¶ 47). Finally, after several warnings and suspensions, the plaintiff's continued misbehavior left no choice but to consider plaintiff's termination. After carefully reviewing the facts, and after protecting all of the plaintiff's due process rights, including but not limited to a properly noticed <u>Loudermill</u> hearing, Watts Elder personally made the decision to fire the plaintiff effective October 16, 2001, only a year after her transfer to CHRO. (Facts, ¶ 71). After failing in a series of CHRO/EEOC cases, complaints to the Auditors of Public Accounts, employment hearings, and grievances, the plaintiff then launched this federal lawsuit. (Facts, ¶ 97).

## II.    FACTS

The State defendants (all named defendants except the Union) rely upon their Local Rule 56(a)1 Statement of Facts, and hereby incorporate them by reference. In addition, the state Defendants rely upon the findings of fact made by four independent fact finders who investigated the Complainant's allegations and unanimously found them to be without merit. These four are the Labor Appeals Referee decision which was affirmed on appeal, (Facts, ¶ 85), the CHRO MAR ruling (Facts, ¶ 90), the written report of personnel investigator Williams (Facts, ¶ 47) and the findings of the Auditors of Public Accounts (Facts, ¶¶ 88-89).

Connecticut Department of Labor Appeals Referee Lee Ellen Terry heard three days of testimony under oath from many witnesses, including the plaintiff herein, all of whom were subject to cross examination. Referee Terry made 42 findings of fact, and

4

she concluded that plaintiff had engaged in "deliberate misconduct which constituted willful misconduct in the course of her employment" as follows:

> "The major continuing issue between the claimant and her supervisor, Leanne Appleton, was that of insubordination, the claimant's refusal to follow Appleton's instructions. The claimant had continually stated that she was right, and that Appleton was insisting that she follow the wrong method of calculating the reports in question.
>
> An employee's refusals to comply with an order by his employer regarding a matter of job performance or conduct during working hours demonstrates a disregard of the employer's interests and constitutes willful misconduct unless it is established that the order was unreasonable or that the employee had good cause for the refusal. *Pells v. Holiday Inns, Inc.* Board Case No. 817-83-BR (7/7/83); *Zdunek v. Cushman Industries, Inc.*, Board case No. 1345-77-BR (5/2/78).
>
> The order was reasonable. Appleton had contacted the OPM more than once to confirm the claimant was not properly calculating her reports, and had continually reminded and ordered the claimant to use the appropriate formula in her reports. Appleton had no choice but to do so in order to comply with the agency requirements.
>
> The only reason the claimant refused to follow the order was her belief that Appleton was wrong and she was right. The claimant's belief was no doubt genuine when one considers her perseverance, but it was not reasonable. Even if the claimant were correct, Appleton advised the claimant that Appleton assumed all ultimate responsibility for the accuracy of the reports. The claimant had nothing to lose by strictly following Appleton's instruction. If Appleton had been wrong, it would be Appleton who would have to accept the consequences, not the claimant. The Referee also agrees with the employer that the tone of the claimant's e-mails and accusations were also unreasonable and disrespectful, as well as unwarranted, demonstrating a disregard of the employer's interests.
>
> The Referee concludes the employer, Commission on Human Rights and Opportunities – State of Connecticut, discharged the claimant, Leonyer M. Richardson, for deliberate misconduct which constituted willful misconduct in the course of her employment." (Facts, ¶ 85).

(This raises issues of res judicata and collateral estoppel which is discussed in Section IV "Arguments", infra).

5

Similarly, the relevant findings of fact made during the Merit Assessment Review ("MAR") stage of the plaintiff's race discrimination and retaliation claims against CHRO (#0210043) are as follows:

> "Notice is hereby given that pursuant to Section 46a-83(b) of C.G.S., the Commission has processed your complaint through its Merit Assessment processes.
>
> Further, you are hereby notified that as a result of these activities, your complaint has been dismissed for the reason that there is no reasonable possibility that further investigation will result in a finding of reasonable cause ...
>
> More specifically, a review of the information in the case file – this information consisting of your complaint affidavit, supporting documentation of respondent's answer, its Schedule A responses and corresponding supporting documentation – is likely to show that respondent's stated reasons for subjecting you to the aforementioned disciplinary actions (e.g. forced administrative leave, warnings and other forms of disciplinary conduct) are likely to be true in light of the extensive supporting documentation submitted by the respondent. This documentation includes – but is by no means limited to – highly detailed memos, warnings and sworn statements from persons possessing personal knowledge of the facts being articulated. Indeed, these affidavits were composed by persons who actually witnessed many of the incidents in question and also serve to belie your version of these events, contrary to your allegations that the individuals in question would support your position. These incidents – which you have characterized as constituting harassment and retaliation – are more likely to support respondent's allegations that your conduct in the workplace was inappropriate and at times, insubordinate, this too, supported by the aforementioned documentation. Moreover, a review of the e-mails and other correspondence issued to your supervisor provide unequivocal examples of your refusal to follow direct orders, despite numerous attempts on the part of respondent to rectify these problems.
>
> The respondent's proffered legitimate, non-discriminatory answer to your complaint allegations is true and yet further supported by the results of an investigation into your claims of discrimination. Of particular significance is the fact that this investigation not only supported respondent's position, but further, was conducted by a disinterested third party. Moreover, a further review of the information in the case file is also likely to reveal that you have exhibited the same deficiencies and inappropriate behaviors

6

with two previous employers, such serving to demonstrate a pattern or propensity for engaging in this type of conduct." (Facts, ¶ 90).

(Here again, this raises issues concerning res judicata and collateral estoppel, as discussed infra.)

The written report from the independent personnel investigator (Herbertia Williams) who was hired by the Defendant Watts-Elder to determine whether there was merit to the plaintiff's allegations, concluded as follows:

**CONCLUSIONS**

1. Leonyer's behavior clearly violates the Workplace Conduct Policy. See documentation of April 5, 2001 when she was "too close for comfort" and May 31, 2001 when her responses were inappropriate. Additionally, investigator underlined relevant examples in the policy statement attached.

2. Leonyer's behavior has created a hostile and chilling work environment. Examples include: screaming and slamming things; speaking to her supervisor in a loud voice; use of aggressive non-verbal communication ; shaking her finger in Leanne's face'; and constantly interrupting when others talk. (Facts, ¶ 47).

Labor Department's Appeals Referee and the MAR decision by the CHRO.

In addition, the Auditors of Public Accounts investigated an anonymous complaint against the CHRO Fiscal Administrative Business Manager, Leanne Appleton, and then informed the State Attorney General that Appleton took "reasonable action when she became aware of the employee's [plaintiff herein] performance problems:

"Dear Mr. Blumenthal:

Your Office forwarded to us an anonymous letter of complaint alleging that the CHRO Fiscal Administrative Business Manger had violated the State's accounting guidelines, as well as some statutory provisions concerning allotments of State appropriations. Our report on the review of the allegations is attached, along with a copy of our file.

The allegations were reviewed as part of our regular audit of the CHRO records and operations for the fiscal years ended June 30, 2001 and 2002.

7

> Apparently for a good part of that period, a State employee, the plaintiff herein] who later was terminated for cause, had failed to properly maintain the CHRO appropriation records and to perform the monthly reconciliation between those records and the State's official accounting records, which are held by the Office of the State Comptroller. The Fiscal Administrative Manager appeared to have taken reasonable action when she became aware of the employee's performance problems . . ."

(Facts, ¶ 88). In the face of these four specific factual findings by the Auditors, and also by Appeals Referee Terry, by the CHRO Merit Assessment Review, and by personnel Investigator Williams, the plaintiff cannot produce any evidence to support her conclusory allegations of race discrimination and retaliation or to show that there are any genuine issues of material fact. Nevertheless, she now seeks a <u>fifth</u> "bite of the apple," in this lawsuit.

### III.     STANDARD OF REVIEW

A motion for summary judgment is granted when there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. <u>American Int'l Group, Inc. v. London American Int'l Corp.</u>, 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Nonetheless, "the statutory purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir.) <u>cert. denied</u>, 474 U.S. 829 (1985).

This is not to say that de minimis evidence is sufficient to overcome summary judgment. Speaking to this issue in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), the United States Supreme Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, not rational fact finder could conclude that the action was discriminatory. **For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the evidence that no discrimination had occurred.**

Id. at 148. (emphasis added).

## IV.    ARGUMENTS

### THE PLAINTIFF CANNOT PROVE A CASE OF RACE DISCRIMINATION UNDER TITLE VII AGAINST THE CHRO.

#### A.    The McDonnell Douglas Test

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 91973), the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof," that applies both to Title VII discriminatory-treatment cases based on race. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), and to cases alleging retaliation. Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995).

According to the Supreme Court, the plaintiff in an employment discrimination case has the burden at the outset of "proving by a preponderance of the evidence a prima facie case of discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 251, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981); see also McDonnell Douglas,

9

411 U.S. at 802. If the plaintiff succeeds in establishing a prima facie case (which she has not done in the present case), the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802. "Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the prima face case." Fisher v. Vassar College, 114 F.3d 1332, 1335-1336 (2d Cir. 1997).

The defendants need not persuade the court that it was actually motivated by the proffered reasons in order to mollify the presumption and obligate the plaintiff to satisfy the burden of proof." Fisher, 114 F.3d at 1335-36 quoting Burdine, 450 U.S. at 254, see also Meiri v. Dacon, 759 F.2d 989, 996 n. 11 (2d Cir. 1985). "If the defendant articulates a nondiscriminatory reason for its actions, 'the presumption raised by the prima face case is rebutted," Fisher, 114 F.3d at 1336, and "simply drops out of the picture." St. Mary's, 509 U.S. at 511. The plaintiff then has an opportunity to prove by a preponderance of the evidence that the employer's reason as "a pretext for discrimination." Burdine, 450 U.S. at 253; McDonnell-Douglas, 411 U.S. at 804. In order to meet this burden in most cases, the plaintiff must show by a preponderance of the evidence "*both* that the reason was false, *and* that discrimination was the real reason." Fisher, 114 F.3d at 1339, quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 113 S. Ct. 2742, 125 L.Ed.2d 407n (1993)(italics in original). See also, Reeves v. Sanderson Plumbing, 530 U.S. 133 (2000). It is not enough for the plaintiff simply to show that the employer's proffered reason for its actions was not the real reason. Fisher, 114 F.3d at 1337-1338. Thus, "[t]hus ultimate burden of persuading the trier of fact that the defendant intentionally

10

discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's, 509 U.S. at 507; Burdine, 450 U.S. at 253.

If the plaintiff fails to produce evidence that would permit the trier of fact to draw a reasonable inference of pretext, then the defendants are entitled to summary judgment. Meiri v. Dacon, 759 F.2d at 998. Some evidence is not enough:

> "But some evidence is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age was the real reason for the discharge. See St. Mary's Honor Ctr. V. Hicks, ___ U.S. ___,)___, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1933); Gallo v. Prudential residential Servs. Ltd. Partnership, 22 F.3d 1219, 1225 (2d Cir. 1994). (Emphasis added).

Woroski v. Nashua Corp., 31 F.3d 105, 109-110 (2d Cir. 1994). In the present case, the plaintiff has no evidence.

**B. Count One (Alleging Title VII and CFEPA Violations Against The Defendant CHRO) Must Be Dismissed.**

**1. There is insufficient evidence to support the inference of a discriminatory motive.**

To defeat a motion for summary judgment on a claim of discriminatory treatment under Title VII based on race, the plaintiff must prove:

> (1) that she belongs to a protected class; (2) that she was performing her duties satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that the adverse action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class.

McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000).

In the present case, there is no dispute that the plaintiff is a member of a protected class, or that she was subjected to an adverse employment action (fired). However, plaintiff cannot possibly show that she was doing her job satisfactorily, or that she was fired under circumstances giving rise to an inference of discrimination.

The facts listed in the state defendants' Statement of Facts in this case and the Findings of Fact made by the Referee, are all based upon sworn statements and testimony, and plaintiff has no evidence to dispute them. Since the plaintiff cannot even establish a prima facie case, this Count must be dismissed. (Collins v. NY Transit Authority, 305 F.3d 113, 119 fn. 1 (2d Cir. 2002).

Even assuming arguendo that the plaintiff could somehow establish a prima face case, the Defendants have clearly articulated their legitimate, non-discriminatory reasons for firing her; namely, her very poor work performance, her insubordination, and her workplace violence. Every one of these reasons provides this Court with an independent, stand alone legitimate non-discriminatory reason for her discharge. Since the plaintiff cannot possibly produce the required evidence that these reasons are pretextual, the defendants are entitled to summary judgment.

Furthermore, the state defendants assert that language in Title VII require that "substantial weight" be given to the findings made in the CHRO merit assessment review. 42 U.S.C. § 2000e-5(b) provides in pertinent part as follows:

> "In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsection (c) and (d)."

CHRO proceedings come within the definition of "proceedings" under "subsection (c) and (d)." The courts have held that since EEOC must accord such proceedings

12

substantial weight, then so should the federal courts. In <u>Univ. of Tennessee v. Elliott</u>, 478 U.S. 788 (1986), the U.S. Supreme Court held, based on the above language, that Congress did not intend to have judicially unreviewed administrative proceedings under subsection (c) or (d) to have preclusive effect on Title VII claims, just substantial weight. However, the Court also held that this language in 42 U.S. § 2000e-5(b) did not apply to other claims, such as these made under 42 U.S.C. § 1981 and § 1983, and that those claims could be barred by the prior unreviewed administrative determination pursuant to res judicata and/or collateral estoppel principles.

Thus, in <u>DeCintio v. Westchester County Medical Center</u>, 821 F.2d 111 (2d Cir.), <u>cert. denied</u> 484 U.S. 965 (1987), the Second Circuit Court of Appeals held that the plaintiff was 'precluded from relitigating the retaliatory discrimination issue in a federal action based on 42 U.S.C. § 1983." The Second Circuit noted that "nothing in the statutory language of the Reconstruction Statutes or 29 U.S.C. § 2159(a)(3) calls for the kind of exception to collateral estoppel principles that <u>Elliott</u> fashioned for Title VII actions." <u>Id.</u> at 118 fn. 13. Thus, while the CHRO merit assessment review decision may only be entitled to "substantial weight" with respect to plaintiff's Title VII claims, principles of collateral estoppel, <u>should</u> be applied to bar ALL of the plaintiff's remaining claims (i.e. 42 U.S.C. § 1981, § 1983, the 14th Amendment to the U.S. Constitution, Article First Sec. 8 and 10 of the Connecticut Constitution, CFEPA, etc.) Therefore, Counts Two and Four of the Complaint must also be dismissed, as discussed further, <u>infra</u>.

It is also important to note that while the CHRO merit assessment review proceeding does fall within these proceedings referred to by subsections 9(c) and (d) in

13

42 U.S.C. § 2000e-5 quoted above, the decision made by the Unemployment Appeals Referee is NOT such a proceeding. Therefore, <u>Elliott</u> cannot be applied to the Appeals Referee's 42 Findings of Fact, or her conclusion that: "The Referee concludes the employer CHRO-State of CT discharged the claimant, Leonyer M. Richardson, for deliberate misconduct which constituted willful misconduct in the course of her employment." The application of collateral estoppel to this issue makes it impossible for the plaintiff to establish a prima face case of race discrimination or retaliation under Title VII (as well as 42 U.S.C. § 1981, § 1983, etc.) because one of the prima facie elements which she must prove is that she was doing her job satisfactorily, <u>supra</u>.

    2.    **Plaintiff is collaterally estopped from re-litigating the issue of her unsatisfactory job performance or the validity of defendant CHRO's legitimate nondiscriminatory reason for its conduct.**

Plaintiff cannot offer evidence that she was doing a satisfactory job, because she is collaterally estopped from doing so. This is exactly what the court held in <u>Harper v. Godfrey Co.</u>, 45 F.3d 143 (7th Cir. 1995) in which the facts were virtually identical to these in the present case and claims were made under Title VII and 42 U.S.C. § 1981:

> The Unemployment Compensation Division (UCD) held hearings and determined that plaintiffs were all properly discharged and thus ineligible for benefits. Plaintiffs did not appeal the agency decision to state court. Id. at 11-112. The district court gave collateral estoppel effect to the UCD's determination that plaintiffs were all discharged for just cause.
>
> Section 1738 mandates that federal courts give full faith and credit to state court decision to the same degree that the decisions would have in the courts of that state. 28 U.S.C. § 1738. Title VII permits plaintiffs to pursue their claims in federal court de novo after they have pursued their claims in state proceedings. <u>University of Tenn. v. Elliott</u>, 478 U.S. 788, 795-96, 92 L. Ed 2d 635, 106 S. Ct. 3220 (1986). [**15]
>
> . . .

>    Elliott, however, does not apply to the present case. The agency decision
>    here was made by an unemployment benefits agency, not an employment
>    discrimination agency. The issue involved was the reason for plaintiffs'
>    discharges, which were not alleged to have been discriminatory . . .
>    Therefore, the UCD decision regarding the reasons for plaintiffs'
>    terminations must receive collateral estoppel effect in federal court.

Id. at 149.

Accordingly, the holding in Harper, is equally applicable to the Labor Referee's factual finding that Leonyer Richardson was not performing her job at the CHRO satisfactorily and was fired for just cause.

The U.S. Supreme Court has ruled that when a state agency has acted in a judicial capacity and decided issues of fact properly before it, and the parties have had an adequate opportunity to litigate, then the federal courts must give the agency's fact finding (even if unreviewed by a court) the same preclusive effect to which it would be entitled in state court. U.S. v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1996). In the present case, there is no question about the fact that the issue of whether the plaintiff was properly discharged for willful or deliberate misconduct was properly before the Appeals Referee who decided the issue against the plaintiff (Facts, ¶¶ 83-85). Neither is there any question about the fact that the same parties herein had a full and fair opportunity to litigate this same issue, since three days of hearings were held, many witnesses (including the plaintiff) testified under oath and were subject to cross examination, a final written decision was issued, a decision on appeal affirmed the Referee's decision. (Facts, ¶¶ 86-87) and a complete transcript of the hearings has been filed with this brief. (Facts, ¶ 84).

Finally, Connecticut courts would give the decision preclusive effect. In McCall v. City of Danbury, 2001 Conn. Super. LEXIS 245 (Conn. 2001), the Court applied the

15

principles of res judicata and collateral estoppel to bar a race discrimination claim under CFEPA after a U.S. District Court in Connecticut had dismissed a Title VII claim based on the same facts, because the Court found that plaintiff had a fair opportunity to litigate it:

> Therefore, this court holds that McCall had a fair opportunity to litigate the claim he pursues in this action in his former federal action. The fact that this claim was brought under General Statutes § 46a-60 and the federal court claim under Title VII is of no moment. It is clear that the principles of res judicata and collateral estoppel apply to preclude relitigation in a state court that which has been, or could have been, fully litigated in federal court. *Virgo v. Lyons, supra,* 209 Conn. 497, 551 A.2d 1243. Id.

Similarly, in N.E. Rehab. Hospital v. C.H.H.C., 226 Conn. 105 (1993), the Connecticut Supreme Court held that a judicially unreviewed administrative adjudication has a preclusive effect as long as the parties have had "an adequate opportunity to litigate." Id. at 128-129. Therefore, it is clear that Connecticut courts would give the Appeals Referee decision preclusive effect.

More importantly, in a disparate treatment employment discrimination case, the court is charged with determining whether intentional discrimination occurred, and does not have a "roving commission to review business judgment." Montana v. First Federal Savings & Loan Ass'n, 869 F.2d 100, 106 (2d Cir. 1989) (internal citations omitted). Thus, the "fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability." Burdine, 450 U.S. at 259. *See also* Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997)("'This Court does not sit as a super-personnel department that reexamines an entity's business decisions'"), *citing* Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986); Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("It is not the function of a fact-finder to

16

second-guess business decisions or to question an [employer's] means to achieve a legitimate business goal"); Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985).

### 3. Plaintiff cannot establish a Prima Face Case of Retaliation.

In order to prevail in a Title VII retaliation claim the plaintiff must prove the following: (1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d. Cir. 1998).

"Upon such a showing, the defendant must demonstrate legitimate reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996); Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569-71 (2d Cir. 1989).

In order to survive summary judgment, the plaintiff must offer evidence establishing a casual nexus between the protected activity and the adverse employment action. Such a burden can be established through direct evidence of "retaliatory animus" or indirectly with circumstantial evidence such as discriminatory or disparate treatment following the protected act. Daly v. Presbyterian Hospital, 2000 U.S. Dist. LEXIS 5 (S.D.N.Y. 2000).

On the issue of a retaliatory motive, the plaintiff in this case cannot prove that

17

such a motive played a role in her discharge as required under Title VII and/or Conn. Gen. Stat.§ 46a-60(a)(4) or § 46a-58. R.E.C.A.P. v. Middletown, 294 F.3d 35, 54 (2d Cir. 2002). For historical background, the plaintiff filed her first complaint of discrimination against the CHRO on July 30, 2001, challenging her prior suspension for misconduct. (Facts, ¶ 45). She later amended her CHRO complaint to include her termination of October 29, 2001.[1]

By July 30, 2001, the CHRO had already experienced plaintiff's outrageous behavior and had begun to discipline her before she filed her first CHRO complaint. In fact, the plaintiff's July 30, 2001 CHRO complaint lists a series of warnings and suspensions for what plaintiff described in ¶ 23 as "disobeying a direct order, displaying offensive or abusive conduct towards co-workers and misused [sic] of state property and equipment."

The laws which forbid retaliation against an employee for filing an employment discrimination claim obviously cannot apply to adverse actions taken by an employer before that complaint was filed. Moreover, the filing of such a complaint does not insulate an employee from discipline up to and including dismissal, for work place violence, poor work performance, or insubordination, all of which the plaintiff continued to exhibit even after she filed her CHRO complaint.

Regarding the plaintiff's subsequent termination on October 29, 2001, the plaintiff has no direct or circumstantial evidence upon which to show a causal connection between any of her prior CHRO complaints and her discharge by CHRO. It is established law that a three-month delay between the time the complaint is filed and the termination (as in the

---

[1] Plaintiff actually amended her CHRO compliant to include her termination on October 25, 2001, after she learned that she was being terminated effective October 29, 2001.

present case) is too long to create an issue as to any causal link based solely on temporal proximity. See, Clark County School District v. Breeden, 532 U.S. 268 (2001).

Furthermore, in Graham v. Texasgulf, Inc., 662 F. Supp. 1451, 1462-63 (D. Conn. 1987), the court addressed the issue of "reasonableness" of the employees manner of opposition to the plaintiff, holding that disruptive opposition is not protected activity. On this issue the Graham court stated:

> In addition, the way in which an employee expresses her opposition to the employer "must be reasonable, as determined on a case by case basis, by balancing the purpose of Title VII, and the need to protect individuals asserting their rights thereunder, against an employer's legitimate demands [**28] for loyalty, cooperativeness and a generally productive work environment." Francoeur, 552 F. Supp. at 412. See, e.g., Houchstadt v. Worcester Found., 545 F.2d 222, 231 (1st Cir. 1976); Pendeleton v. Rumsfield, 202 U.S. App. D.C. 102, 628 F.2d 102 (D.C. Cir. 1980);

Id.

The plaintiff's behavior in the workplace culminating in her hostile outburst on September 25, 2001 tips the balance against an inference of a retaliatory motive. (Facts, ¶¶ 4-72).

Lastly, as with the plaintiff's Title VII disparate treatment race claim, she has only two routes to prevent summary judgment:

> The plaintiff in a retaliation case should have two (and only two) distinct routes to obtaining/preventing summary judgment. One, the more straightforward, the one that is unrelated to *McDonnell Douglas*, is to present direct evidence. . . .
>
> The second route to summary judgment, the adaptation of *McDonnell Douglas* to the retaliation context, requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action <u>even though he was performing his job in a satisfactory manner</u>. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a

noninvidious reason for the adverse action, he is entitled to summary judgment. (Emphasis added).

Stone v. City of Indianapolis, 281 F.3d 640, 644 (7th Cir.), cert. den. 123 S. Ct. 79 (2002). In the present case, collateral estoppel prevents the plaintiff from re-litigating the factual conclusion that she was NOT performing her job satisfactorily prior to being fired. The factual evidence and conclusions by the Labor Department Appeal Referee overwhelming defeats any suggestion by the plaintiff that she was retaliated against.

Even assuming arguendo that she could somehow make out a prima facie case, the defendants have certainly produced evidence to show their legitimate, non-discriminatory reasons for firing her, namely insubordination, poor performance, and violence in the workplace. The courts have held that under these circumstances, the plaintiff must show that these reasons are pretextual:

> Finally, plaintiff contends that defendant fired her in retaliation for filing her complaint. Defendant came forward with several legitimate reasons for the decision to fire plaintiff. Defendant received complaints from company executives about plaintiff's performance. In addition, defendant proffered evidence which suggests that plaintiff had difficulty working with her co-workers and supervisors. The district court correctly found that Continental articulated several legitimate reasons why Holt was fired. She was disruptive; there had been complaints by clients; she did not take direction from her supervisors. These are all legitimate reasons for firing an employee. See *Graham v. Texasgulf, Inc.*, 662 F. Supp. 1451, 1462 (D. Conn. 1987), aff'd 842 F.2d 1287 (2d Cir. 1988). [*131]
>
> In order to prevail, plaintiff must show that these articulated reasons are pretextual. Plaintiff, however, has put forth no evidence to show that defendant's asserted reasons for the retaliation were pretextual. Since no genuine issue of material fact remains, the district court correctly granted summary judgment on this issue and we affirm.

Holt v. KMI Continental, Inc. 95 F.3d 123, 131 (2d Cir. 1996). Of course, the plaintiff herein, like Holt, will not be able to produce evidence of pretext.