Ironically, to get by summary judgment, the plaintiff will have to show that Watts Elder, herself an African American female, discriminated against her because of her race. In contrast, it was Watts Elder who gave the plaintiff a reference to obtain a job at OPM (Facts, ¶ 10) and who gave the plaintiff a fresh start at the CHRO after the plaintiff's behavior almost cost her a job at OPM (Facts, ¶ 19). It was Watts Elder who gave the plaintiff several warnings and a suspension through progressive discipline in an attempt to correct her behavior before ultimately deciding to terminate her employment. (Facts, ¶¶ 24, 26, 42, 44, 53). There is simply NO EVIDENCE that race played a role in Watts Elder's decision to terminate the plaintiff's employment.

### 4. Plaintiff's state law claims are barred by the Eleventh Amendment.

Connecticut's waiver of state sovereign immunity through its state statutes (Conn. Gen. Stat. § 46a-83(a), Conn. Gen. Stat. § 46a-94a, Conn. Gen. Stat. § 46a-99, Conn. Gen. Stat. 46a-100, and Conn. Gen. Stat. § 46a-101) does not amount to a waiver of the state's 11th Amendment immunity in federal court. See e.g., Page v. CT Dept. of Public Safety, 185 F. Supp. 2d 149, 159 (D. Conn. 2002) and Alungbe v. Bd. of Trustees, 283 F. Supp. 2d 674, 687-88 (D. Conn. 2003). The federal courts have specifically held that claims (such as plaintiff's) under Conn. Gen. Stat. § 46a-58 (see Plaintiff's Complaint, p. 1, ¶ 1) cannot be brought in federal court, Garcia v. St. Mary's Hospital, 46 F. Supp. 2d 140, 142 (D. Conn. 1999), and neither can plaintiff's claims (see Plaintiff's Complaint, p. 1, ¶ 1) under Conn. Gen. Stat. § 46a-60. See, Lyon v. Jones, 168 F. Supp. 2d 1, 6 (D. Conn. 2001) and Alungbe v. Bd. of Trustees, 283 F. Supp. 2d at 687-688.

It should also be noted that the plaintiff never bothered to exhaust her state law remedies in her complaint #0210043 against CHRO, in which she alleged inter alia that

21

CHRO disciplined her and discharged her in violation of Conn. Gen. Stat. §§ 46a-58 and 46a-60. (Facts, ¶ 91) when this complaint was dismissed by CHRO at the merit assessment review stage on March 15, 2002 pursuant to Conn. Gen. Stat. § 46a-83(b), plaintiff was notified in writing that she could request reconsideration, but she never did so. (Facts, ¶ 91). Thereafter, CHRO properly issued plaintiff a Right to Sue letter on April 10, 2002 pursuant to Conn. Gen. Stat. § 46a-83a, which gave her the right to file an action in Connecticut Superior Court pursuant to Conn. Gen. Stat. § 46a-100 and 101, but she never did that either. (Facts, ¶ 99). Instead, she filed this federal action against CHRO (and others) on April 18, 2002 (Facts ¶ 69), in which she seeks to pursue these state law claims (as well as her federal law claims) against CHRO. However, this Court has no jurisdiction to hear them because of the 11th Amendment, as noted above.

### COUNT TWO AGAINST WATTS ELDER IS BARRED BY THE ELEVENTH AMENDMENT.

The plaintiff's claims of race discrimination and retaliation under 42 U.S.C. § 1981, § 1983 and the Connecticut Constitution against defendant Watts Elder is barred by the Eleventh Amendment. The plaintiff has sued Defendant Watts Elder only in her official capacity, and she has sued Defendants Appleton, Bardot and Yelmini in their official and individual capacities. Since official capacity suits are regarded as just another form of a claim against the State itself, the 11th Amendment bars actions under 42 U.S.C. § 1981 and § 1983 against named State officials who are sued in their official capacities. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Therefore, the claim against Watts Elder must be dismissed because it is barred by the 11th Amendment.

**COUNT TWO AGAINST APPLETON FAILS BECAUSE PLAINTIFF CANNOT PROVE A PRIMA FACIE CASE UNDER EITHER 42 U.S.C. §§ 1983 OR 1981.**

The plaintiff alleges in paragraph 26-39 of her complaint that defendant Leanne Appleton discriminated against her because of her race in violation of the Equal Protection clause of the 14th Amendment under 42 U.S.C. § 1983. She further alleges two bases of liability under 42 U.S.C. §1981, namely – (1) discrimination in the terms and conditions of her employment and (2) retaliation for complaining about alleged acts of discrimination towards her. As explained below, all of these claims fail for legal insufficiency or for lack of proof.

First, the plaintiff's claims against Defendant Appleton individually under 42 U.S.C. § 1981 are barred because § 1983 is the exclusive remedy against state actors for the violation of someone's constitutional rights.[2] Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); Burbank v. O.A.G., 240 F. Supp. 2d 167, 175 (D. Conn. 2003).[3] Moreover, the plaintiff's claim under 42 U.S.C. § 1983 merely alleges that the equal protection clauses of the state and federal constitutional were violated.  Such non-specific, vague, and conclusory allegations do not state cause of action under 42 U.S.C. § 1983. Koch v. Yunich, 533 F.2d 80, 84 (2d Cir. 1976).

Second,  as previously noted, principles of  res judicata and collateral estoppel apply to this case, with respect to both the CHRO decision and the Appeals Referee decision, to bar the plaintiff's claims under 42 U.S.C. § 1981 and § 1983 (and all her

---

[2]    Even if the plaintiff could bring a claim under 42 U.S.C. § 1981, she has alleged nothing but conclusory allegations, and thus has failed to state a claim upon which relief may be granted. See, Mian v. Donaldson, Lufkin & Jenrette, 7 F.3d 1085, 1087 (2d Cir. 1993).

[3]    Although there is a split among the circuits about whether the 1991 amendments to the Civil Rights Act changed the holding in Jett, the District Court of Connecticut in Burbank adopted the 5th Circuit's reasoning  that the 1991 act did not reverse Jett.  The Burbank case is attached as addendum A.

23

other claims, including CFEPA claims).  The test is whether or not the parties had a full

and fair opportunity to litigate:

> "Under the doctrine of res judicata, or claim preclusion, a former
> judgment on a claim, if rendered on the merits, is an absolute bar to a
> subsequent action on the same claim.  A judgment is final not only as to
> every matter which was offered to sustain the claim, but also as to any
> other admissible matter which might have been offered for that purpose."
> [Citation omitted].
>
> "Collateral estoppel, or issue preclusion, is that aspect of res judicata
> which prohibits the relitigation of an issue when that issue was actually
> litigated and necessarily determined in a prior action between the same
> parties upon a different claim."  *In re Juvenile Appeal* (83-DE), 190 Conn.
> 310, 316, 460 A.2d 1277 (1983).  Both issue and claim preclusion
> "express no more than the fundamental principle that once a matter has
> been fully and fairly litigated, and finally decided, it comes to rest."  *State
> v. Ellis*, 197 Conn. 436, 465, 497 A.2d 974 (1985) . . . .
> As a general proposition, the governing principle is that administrative
> adjudications have a preclusive effect when the parties have had an
> adequate opportunity to litigate.  [Citations omitted].  "[A] valid and final
> adjudicative determination by an administrative tribunal has the same
> effects under the rules of res judicata, subject to the same exceptions and
> qualifications, as a judgment of a court.'

N.E. Rehab. Hosp. of Hartford v. Comm'n on Hospitals and Health Care, 226 Conn. 105,

128-29 (1993).  As previously briefed in connection with plaintiff's Title VII claim

against CHRO, the exhibits filed in connection with the Motion for Summary Judgment

show beyond doubt that the parties fully and fairly litigated the issue of whether the

plaintiff was properly discharged for deliberate and willful misconduct before the Labor

Department Appeals Referee, who decided the issue in a carefully written decision

against the plaintiff. (Facts, ¶ 86).

This issue, as well as the plaintiff's race discrimination and retaliation claims,

were also fully and fairly litigated in the CHRO merit assessment review, and here again,

all of the findings and orders were adverse to the plaintiff.  The question of whether or

not a CHRO MAR proceeding provides a full and fair opportunity to litigate was decided

recently by Judge Ellen Bree Burns:

> The Plaintiff in this case does not claim that the CHRO failed to furnish
> her with such an opportunity to comment on the physician's statement.
> Rather, her only argument centers around the unsubstantiated assertion
> that the MAR process somehow prevented her from fully litigating her
> claim simply because she could not "call her physicians as witnesses, or
> testify herself . . . as would be the case in this Court." . . . This conclusory
> argument is unpersuasive. In light of the aforementioned statutory
> language, it would be unreasonable to conclude that the plaintiff lacked
> the opportunity to fully litigate her claim.

> Furthermore, in *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2d
> Cir. 1977), the Second Circuit ruled that an administrative agency's
> dismissal of a complaint on its legal merits without an evidentiary hearing
> could nevertheless bar subsequent litigation on the same claim. The facts
> of that case were very similar to those now before this Court.

Kalanquin v. Heublein, Inc., 1999 U.S. Dist. LEXIS 11798 (Docket No. 3:98CV1990,

6/21/99, Burns, J.), 5 Conn. Ops. 821, 822 (D. Conn. 1999).

Third, it is well settled law that in a civil rights action, a plaintiff must

demonstrate the defendant's direct or personal involvement in the actions that are alleged

to have caused the constitutional deprivation. Rizzo v. Goode, 423 U.S. 362, 376-378,

96 S. Ct. 598, 606-607 (1976); Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); U.S.

ex rel. Summer v. Dixon, 524 F. Supp. 83, 85 (N.D.N.Y. 1981), aff'd, 709 F.2d 173, 174

(2d Cir. 1983) (per curiam), cert. denied, 434 U.S. 1087 (1977); Ellis v. Blum, 643 F.2d

68, 85 (2d Cir. 1981). Liability cannot be founded on official's position alone. Horowitz

v. Anker, 437 F. Supp. 495, 504 (E.D.N.Y. 1977), aff'd mem. 578 F.2d 1368 (2d Cir.

1978); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.), cert. denied, 434 U.S. 1087

(1977); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974). A public official can only

be liable if the official causes the harm. Baker v. McCollan, 443 U.S. 137, 142, 99 S. Ct.

2689, 2693 (1979); Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985).

"[T]here must be some showing of personal responsibility" to support an individual

capacity damages claim.  Duchesne v. Sugarman, 566 F.2d 817, 830 (2d Cir. 1988);

McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087

(1978) (emphasis added); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985); Alfaro

Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); Gill v. Mooney, 824 F.2d 192,

196 (2d Cir. 1987). To have created a policy or custom under which there were

unconstitutional practices, one must have "impliedly or tacitly authorized, approved or

encouraged" the constitutional violation. Turpin v. Mailet, 619 F.2d 196 (2d Cir. 1980),

cert. denied, 449 U.S. 1016, 101 S. Ct. 577 (1980); see also Rizzo v. Goode, 423 U.S. at

371-72.

Furthermore, individual defendants are not liable simply by virtue of their

position in the organizational chain of command because a subordinate committed a

constitutional violation. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)(doctrine of

Respondeat Superior does not apply to Section 1983 actions).  In Poe v. Leonard, 282

F.3d 123, 141 (2d Cir. 2002), the Court of Appeals set forth the standard for liability

when the cause of action is based on a supervisor's deliberate indifference to the rights of

others. In that case the Court's comments regarding the pleading requirements is

instructive:

> We have held that a supervisor may be found liable for his deliberate indifference
> to the rights of others by his failure to act on information indicating
> unconstitutional acts were occurring or for his gross negligence in failing to
> supervise his subordinates who commit such wrongful acts, provided that the
> plaintiff can show an affirmative causal link between the supervisor's inaction
> and her injury.             *       *       *

26

> Poe [plaintiff] must allege sufficient facts to raise a triable issue of fact whether Leonard knew or should have known of the high degree of risk that Pearl would have inappropriately had with a woman during his assignment . . .

Id. at 141-42. The rule gleaned from the Poe case is that the plaintiff must allege and prove specific knowledge of facts putting each individual defendant on notice of facts giving rise to a constitutional violation. Otherwise the daily operational decisions of every lower level supervisor would subject every manager to individual liability. Such a result would be inconsistent with federal law.

There is no evidence that Appleton had any personal involvement in any constitutional violation. It is uncontested that only Defendant Watts Elder made the decisions concerning the discipline and discharge of the plaintiff, not Defendant Appleton. (Facts, ¶¶ 72, 98). Assuming arguendo that the plaintiff can transverse these legal impediments, her § 1981 and § 1983 claims still fail for lack of proof.

### Section 1981

The types of discipline the plaintiff alleges as adverse employment actions include two suspensions and her eventual termination. The analysis of the plaintiff's section 1981 claim follows the same burden shifting method employed in a disparate treatment case under Title VII. McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); Farias v. Instructional Sys., 259 F.3d 91, 98 (2d Cir. 2001).

In order to prove a case under section 1981 the plaintiff must proffer evidence to prove the following: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993); Louis Watts, Sr. v. New York City

27

Department of Juvenile Justice, 2003 U.S. Dist. LEXIS 21035 (S.D.N.Y. 2003). A
plaintiff alleging race discrimination must do more then simply offer conclusory
allegations. Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994).

In the present case, the plaintiff cannot prove that she was discriminated against
because of her race. The most telling evidence of this fact is the plaintiff's own testimony
that all of the other black employees (not similarly situated white employees) were
treated better than her by Appleton. (Facts, ¶ 46). The plaintiff has no evidence of
similarly white employees who engaged in comparable behavior who were not
disciplined.

The plaintiff's retaliation claim under section 1981 fails for the same reason,
namely – that the plaintiff cannot show a retaliatory animus. As has already been pointed
in this brief, the three month gap between the plaintiff's filing of her July 30, 2001 charge
of discrimination and her termination eliminates a temporal nexus for a retaliation claim.
That fact, added to the overwhelming evidence in the form of e-mails, witness statements
and the factual conclusions of the Labor Department that Richardson was terminated for
just cause more than refutes the plaintiff's conclusory allegations of retaliation.

### Section 1983

Defendant Appleton reminds the court  that all of the disciplinary actions taken by
the CHRO were done at the Direction of the Executive Director, Watts Elder. In fact,
Appleton had no authority to suspend or otherwise discipline the plaintiff. (Facts, ¶ 98).

In this Circuit, a plaintiff can prove a violation of equal protection where:  (1) "the
person, compared with others similarly situated, was selectively treated; and (2) such
selective treatment was based on impermissible considerations such as … intent to inhibit

28

or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Presnick v. Town of Orange, 152 F. Supp. 2d 215 (D.Conn. 2001); citing Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996).   A "class of one" equal protection claim requires proof that a plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. [citations omitted.]" Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  The plaintiff has the burden of proof to establish intentional and arbitrary discrimination because "the good faith of such officers and the validity of their actions are presumed...." Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 353 (1918).  Mere failure to prosecute other offenders does not establish a denial of equal protection. LeClair v. Saunders, 627 F.2d 606, 608-11 (2d Cir. 1980) citing Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109-110 (1949) and United States v. Rickenbacker, 309 F.2d 462 (2d Cir. 1962), cert. denied, 371 U.S. 962 (1963). Pena v. Recore, et al., 2001 U.S. Dist. LEXIS 278 *16 (E.D.N.Y. 2001) (allegation of difference in treatment insufficient to state equal protection claim).

In the present case, the finding of four independent investigations (Herbertia Williams, Public Auditors, CHRO MAR, and the Labor Department Appeals Referee) more than provide an adequate rational basis for the decisions made by Watts Elder. Furthermore, there is no evidence supporting the plaintiff's theory of any conspiracy between Appleton and Yelmini, Bardot or OPM. Richardson testified that she is unaware of any conversations between Appleton and OPM that even remotely support such a theory. (Facts, ¶ 100).  Lastly, the plaintiff cannot point to any similarly situated employees who were treated differently for comparable conduct.  The sum of the

plaintiff's case relies entirely upon her own opinion that she performed satisfactorily based on her subjective perceptions.

## COUNT FOUR AGAINST DEFENDANTS YELMINI AND BARDOT FAILS FOR A LACK OF PROOF

Plaintiff's claim against defendants Bardot and Yelmini is somewhat convoluted. Essentially, the plaintiff alleges that Bardot promised to reinstate the plaintiff into state service as part of a Step 3 grievance regarding her termination. Bardot then allegedly refused to perform the agreement after allegedly being told by Yelmini to scuttle the deal. Plaintiff also alleges that the decision to scuttled the alleged agreement was in retaliation for filing an amended CHRO complaint on October 25, 2001 raising issues of discrimination against the CHRO.

The plaintiff's proof on this matter is even weaker (if that is possible) than her other claims. At the outset the defendants point out that other than Richardson's bald allegation, there is NO PROOF of any agreement to reinstate the plaintiff. All of the participants present at the Step 3 grievance hearing on October 22, 2001 confirm that there was NO AGREEMENT. Those people include Donald Bardot, Leanne Appleton, Warren Cullen and Joseph Zakrzewski (plaintiff's union representatives). (Facts, ¶ 78). The only person who distorted the facts to allege such an agreement is Richardson. More telling is Richardson's own admission that Bardot told her that he had no authority to reinstate her. (Facts, ¶ 79). Yelmini was not even present at the Step 3 hearings.

Established federal law requires that in order to prove a claim of race discrimination or retaliation under section 1983 or 1981, the plaintiff must prove that the plaintiff's "race" or her "protected activity" was a motivating factor in the adverse action. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)(race discrimination); Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d. Cir. 1998) (retaliation).

In light of the plaintiff's own admission that Donald Bardot had no authority to reinstate the plaintiff and the uncontested testimony of the plaintiff's own union representatives that there was "no agreement" to reinstate her, the plaintiff simply has no proof of discrimination or retaliation by Bardot or Yelmini under section 1981.

## ALL OF THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the plaintiff could prove a prima facie claim against any of the individual defendants, qualified immunity acts to bar such claims.

It is well settled that public officials performing discretionary functions are entitled to qualified immunity from liability. Anderson v. Creighton, 483 U.S. 635 (1987); Harlow v. Fitzgerald, 457 U.S. 800 (1982). Qualified immunity protects all but the plainly incompetent or those who knowingly violate law. Malley v. Briggs, 475 U.S. 335, 341 (1986). The doctrine of qualified immunity provides that public officials are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; O'Hagan v. Soto, 725 F.2d 878, 879 (2d Cir. 1984). Immunity ordinarily should be decided by the court. Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994). Summary judgment is encouraged as a device for disposing of claims barred by such immunity in order to relieve government officials of the burdens of litigation. Harlow, 457 U.S. at 818; Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Once a trial is held, it is too late to vindicate the important purpose of qualified immunity, that is, allowing the official to avoid standing trial. Mitchell v. Forsyth, 472 U.S. 511, 527 (1985); Mozzochi v. Borden, 959 F.2d 1174, 1177-78 (2d Cir. 1992).

In analyzing a claim of qualified immunity, the law has established a three-part inquiry. Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), citing, Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) and Anderson v. Creighton, supra. The first consideration is whether the law alleged to have been violated was clearly established at the time. Robinson v. Via, 821 F.2d 913, 920 (2d Cir. 1987). This question is a threshold inquiry, Natale v. Town of Ridgefield, 927 F.2d 101, 105 (2d Cir. 1991), and is a question of law for the Court to decide. Johnson v. Jones, 515 U.S. 304, 311 (1995). It is important in this regard for a Court "not to pose the issue in terms that are too general or abstract." Mozzochi, 959 F.2d at 1177. Rather, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Finnegan v. Fountain, 915, F.2d 817, 823 92d Cir. 1990). Second, the Court must decide whether it was clear at the time that an exception did not permit the actions in question. Gittens v. LeFevre, 801 F.2d 38, 42 (2d Cir. 1989).

Finally, even if a court concludes that the law was clearly established, it must determine whether it was objectively reasonable for the official to believe that his actions did not violate clearly established constitutional rights. Oliveira, 23 F.3d at 648-49. The subjective motivation of the official is irrelevant to this inquiry. Anderson, 483 U.S. at 641. Rather, the focus is on whether a reasonable official in the position of the defendant could have believed that his actions were lawful. In a situation in which officials of reasonable competence could disagree on the legality of the defendant's actions, the official is entitled to qualified immunity. Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993); O'Neill v. Babylon, 968

32

F.2d 646, 649-50 (2d Cir. 1993). This is so "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of [as long as it] was objectively reasonable for him to believe that his acts did not violate those rights." Danahy v. Buscaglia, 134 F.3d 1185, 1190 (2d Cir. 1998).

In the present case, the plaintiff has failed to produce any evidence that the Defendants Appleton, Bardot or Yelmini violated any clearly established rights, or that a reasonable official in their positions would have understood that what they did violated such rights or were unlawful. Therefore, qualified immunity protects all three of them in their individual capacities.

The plaintiff's only claims against Yelmini and Bardot have to do with her allegation in ¶¶ 41-46 of her complaint, that Bardot had "agreed to reinstate Ms. Richardson's employment with the State." (Complaint ¶ 42) and that Bardot (based on pressure from Yelmini) then refused "to reinstate her employment with the State." (Complaint ¶ 45). In his deposition, Bardot testified that he never promised the plaintiff another job, and that he never had any authority to make such a promise, which is supported by everyone else present, except the plaintiff. (Facts, ¶ 78). In her deposition, the plaintiff finally admitted recalling that Bardot had indeed told her that he had no authority to make such a promise. (Facts, ¶ 79). The plaintiff's union representative testified at their deposition in support of Bardot's version of events. (Facts, ¶ 78).

Finally, defendant Appleton's conduct throughout the time that she supervised the plaintiff was fully justified, and even required, by the insubordination, poor work performance, and workplace violence exhibited by the plaintiff. Indeed, Appleton's conduct was fully supported and vindicated by the Auditors of Public Accounts, by Ms.

33

Williams personnel investigation, by the CHRO MAR decision, by the Appeals Referee, and most importantly, by CHRO Executive Director Cynthia Watts Elder. (Facts, ¶¶ 4-88). Certainly, no reasonable official in Appleton's position could possibly have thought that any of her conduct was unlawful in any way, and in fact it was Watts Elder, and not Appleton, who actually made all of the decisions adverse to plaintiff (suspensions, discharges, etc.) Plaintiff did not sue Watts Elder personally.

### COUNT THREE AGAINST THE OFFICE OF POLICY AND MANAGEMENT MUST BE DISMISSED BECAUSE THE PLAINTIFF HAS FAILED TO OBTAIN A RIGHT TO SUE LETTER FROM THE DOJ AND HER CLAIM HAS NO MERIT.

For a variety of reasons the plaintiff's claim against the Office of Policy and Management is legally insufficient to withstand summary judgment. First, assuming that the plaintiff could assert a Title VII claim against a non-employer agency such as OPM, her claim is barred because she never obtained the Right to Sue letter from the Department of Justice ("DOJ"), which is required by 42 U.S.C. § 2000e-5(f)(1). In fact, the plaintiff never even asked the Justice Department to issue the letter, all of which is fatal. Ward v. Florida Dept. of Juv. Justice, 194 F. Supp. 1250, 1257 (N.D. Fla. 2002). While it is true that the plaintiff did obtain a Right to Sue letter from the Justice Department with respect to some of her claims against CHRO, this does not matter, because her claims against OPM have always been different. She had implicitly admitted this fact because she filed two separate CHRO complaints against OPM. The first complaint (#0010435) was filed on May 30, 2000 and amended on July 7, 2000, and it covers all of the allegations which appears in paragraphs 11 (second sentence), and 18-27 of the complaint in the present case. (Facts, ¶ 15). However, that complaint was settled

pursuant to a written Settlement Agreement and General Release which was signed by OPM and the plaintiff on September 21, 2000. (Facts, ¶ 20).

Soon thereafter, the plaintiff attempted to repudiate that agreement by filing a request for reconsideration with CHRO, but that request was denied on October 15, 2001 and the Settlement Agreement was found to be valid. Moreover, the plaintiff never even attempted to obtain a Right to Sue letter from the Department of Justice with respect to complaint #0010435. Therefore, the allegations therein are time barred.

The plaintiff then filed a second CHRO complaint against OPM (#0210422) on April 9, 2002 in which she raised all of the same allegations against OPM and its employees which appear again in the federal complaint in this case in ¶¶ 27, 29 and 40-49. That complaint is still pending before the CHRO, as plaintiff concedes in ¶ 14 (second sentence) of the federal complaint in this case, although she claims therein that "further exhaustion of these administrative complaints [she also has one pending against her union] would be futile." Unfortunately for plaintiff, it does not matter for Title VII purposes whether or not she thinks it would be futile to obtain a Right to Sue letter from the DOJ. The fact is that without such a letter for either one of her two complaints against OPM, her claims in this action must be dismissed.

More importantly, the plaintiff has never even sought a Right to Sue letter from DOJ with respect to either of her two cases against OPM. She was certainly aware of her right to request them, because she obtained one with respect to her complaint against CHRO (#0210043), although she never used it to file suit against CHRO in state court pursuant to Conn. Gen. Stat. § 46a-100 and § 46a-101 which she could have done. It is important to note, however, that Connecticut's waiver of state sovereign immunity

through Conn. Gen. Stat. §§ 46a-99, 100 and 101 does <u>not</u> amount to a waiver of the

state's 11th Amendment immunity in federal court.

> Conn. Gen. Stat. § 46a-100 (1999). Connecticut has waived its immunity,
> but only with respect to cases brought in the Superior Court. The fact that
> a state has consented to suit in the courts of its own creation does not
> mean that it consents to suit in federal court. *Smith v. Reeves*, 178 U.S.
> 436, 441-45, 20 S. Ct. 919, 44 L. Ed 1140 (1900). Therefore, the Court
> grants defendants' motion for summary judgment as to the CFEPA claim
> brought against the Department of Public Safety on the ground that it is
> barred by Eleventh Amendment immunity. *Walker v. Connecticut*, 106 F.
> Supp. 264, 370 (D. Conn. 2000).

<u>Page v. CT D.P.S.</u>, 185 D. Supp. 2d 149, 159 (D. Conn. 2002). <u>See also</u>, <u>Alungbe v. Bd.</u>

<u>of Trustees</u>, 283 F. Supp. 2d 674, 687-88 (D. Conn. 2003). Thus, the plaintiff's claims

against OPM pursuant to Conn. Gen. Stat. § 46a-60 and § 46a-58 in this federal action

are also barred by the 11th Amendment.

The law is well established that claims pursuant to Conn. Gen. Stat. § 46a-58

cannot be brought in federal court in any event, <u>Garcia v. St. Mary's Hospital</u>, 46 F.

Supp. 2d 140, 142 (D. Conn. 1999); nor can her Conn. Gen. Stat. § 46a-60 claims, <u>Lyon</u>

<u>v. Jones</u>, 168 F. Supp. 2d 1, 6 (D. Conn. 2001); <u>Alungbe v. Bd. of Trustees</u>, 283 F. Supp.

2d at 687-88. Furthermore, this Court should decline to exercise pendant jurisdiction

over any of the plaintiff's state law claims, since all of her federal claims must be

dismissed. <u>See</u>, 28 U.S.C. § 1367(a) and (c)(3); <u>United Mine Workers v. Gibbs</u>, 383 U.S.

715, 726 (1966); <u>Occhino v. Lannon</u>, 150 F.R.D. 613, 627 (D. Minn, 1993).

Second, assuming <u>arguendo</u> that the plaintiff could somehow get past the

foregoing procedural bars, her claim in ¶ 64 of her complaint that her collective

bargaining agreement (hereinafter "CBA") violated the retaliation provisions of Title VII

is misdirected. This is the same exact claim which she raised in her request for

reconsideration in her CHRO Complaint #0210422 against OPM which is that Art. 15 Sec. 10 of her CBA prevented her from going to arbitration with her discrimination claims once she filed a CHRO complaint against OPM.  That section of the contract states that "disputes over claimed unlawful discrimination shall be subject to the grievance procedure but cannot be arbitrated if a complaint is filed with CHRO arising from the same common nucleus of operative facts."  (Facts, ¶ 80). Plaintiff claims that this clause amounts to illegal retaliation under the ruling in <u>Johnson v. Palma</u>, 931 F.2d 203 (2d Cir. 1991) and <u>Alexander v. Gardiner Denver Co.</u>, 415 U.S. 36 (1974).  OPM vigorously disagrees.

It is important to note that it was the plaintiff's A&R Union, and not any of the state defendants, who withdrew the plaintiff's request for arbitration.  (Facts, ¶ 67).  The Union admits this fact in their Answer to the plaintiff's federal complaint in (Facts, ¶ 101), and the Union also states that the plaintiff could have appealed their withdrawal of the request for arbitration, but she failed to do so.  (Facts, ¶ 67).  Moreover, the Union stated in their Answer that, "In addition, the Collective Bargaining Agreement allows an individual to pursue the grievance in arbitration."  Thus, the plaintiff's allegations that the defendant OPM (or the Union for that matter) prevented her from taking her case to arbitration is belied by the language of the CBA itself.

The <u>Johnson v. Palma</u>, 931 F.2d 203 (2 Cir. 1991) case, upon which the plaintiff relies, is distinguishable from the present facts.  In <u>Johnson</u>, the employer had a *unilateral policy* of terminating grievance procedures when an employee filed an employment discrimination complaint with a state agency.  The union acquiesced in the employer's policy.  However, the Second Circuit found that the employer's unilateral

practice and the union's concurrence constituted an adverse employment action under Title VII. The <u>Johnson</u> case did not involve a collectively bargained for election of procedural remedies clause, as we have before us, that exempts from arbitration employment discrimination claims that are filed with the state CHRO.

Recent decisions emphasize the labor law principles that defer to the intent of the parties as expressed in their mutually agreed upon collective bargaining agreement. For example, in the very recent case of <u>EEOC v. Waffle House, Inc.,</u> the Supreme Court recognized the important of giving weight to the parties' clear intent to arbitrate or not as expressed in the collective bargaining agreement. 534 U.S. 279 (2002). "The FAA . . . does not require parties to arbitrate when they have not agreed to do so. [citation omitted.] . . . . [W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.

"Arbitration under the [FAA] is a matter of consent, not coercion." [citations omitted.] <u>Id</u>. at 288, 293. The <u>Waffle House</u> reasoning reflects and supports the Connecticut situation. Supreme Court precedent allows employers to direct employees to specific forums to redress employment discrimination claims.

In <u>Gilmer v. Interstate Johnson Lane Corporation</u>, 500 U.S. 20, 111 S. Ct. 1647 (1991), the Supreme Court held that an employee could be required to arbitrate an age discrimination case under ADEA. In <u>Gilmer</u>, the Supreme Court expressly rejected an employee's argument that compulsory arbitration of his ADEA case would improperly deprive him of the judicial forum provided for by the ADEA. The Court stated, "If Congress intended the substantive protection against waiver of the right to a judicial

forum, that intention will be deducible from the text or legislative history." Id. at 29. In

1998, the U.S. Supreme Court went a big step further in Wright v. Universal Maritime

Service Corp., as explained in Pender v. District 37, AFSCME, 223 F. Supp. 2d 534

(S.D.N.Y. 2002):

> Finally, in 1998 in Wright the Court addressed the question whether a
> mandatory arbitration clause in a collective bargaining context could be
> used to prevent an employee from bringing an employment discrimination
> lawsuit. The Court held that, even assuming a collective bargaining
> agreement arbitration clause is enforceable to compel arbitration of an
> employee's statutory discrimination claim, such a clause would only be
> enforced if it was "particularly clear" that it was intended to cover such
> claims. 525 U.S. at 79, 82. [*541]  Hence, the Court held that a union-
> negotiated waiver of an employee's statutory right to a judicial forum is
> enforceable. . . . Id. at 541.

In fact, several courts in this Circuit and in this District have approved the waiver of

statutory discrimination claims in the context of a CBA provision:

> C.      Whether the Plaintiffs Here Prospectively Waived their Title VII
>         Claims Under the CBA
>
> The only question remaining is whether this provision is enforceable
> against the plaintiffs. Of course, this is precisely the question reserved by
> the Court in Wright, even as it hinted in dicta that, were it presented with a
> CBA containing clearer and more express language, it might well approve
> the waiver of [**36] statutory claims in such a context. In resolving the
> question here against the plaintiff, this Court does not presume to extend
> the law. Rather, following the guidelines set forth in Wright, it analyzes a
> CBA and arrives at a conclusion that seems a fair application of those
> guidelines to very different facts.
>
> Other courts have reached the same conclusion in similar circumstances.
> In Almonte v. Coca-Cola Bottling Co. of New York, Inc., 959 F. Supp. 569
> (D. Conn. 1997), the plaintiff, a union member covered by CBA, was
> alleging violation of his rights under 42 U.S.C. § 1981, having declined to
> submit his claim to arbitration. Chief Judge Dorsey, ruling without benefit
> of the Court's guidance in Wright, found the statutory claim to be
> arbitrable pursuant to a clause in the CBA providing that "in respect to
> [all] . . . conditions of employment, neither the Employer, nor the Union,
> will discriminate against any employee [*333] because of race, . . . [or]
> color . . . as defined under Connecticut State Law and Federal Laws . . . ."

> *Almonte,* 959 F. Supp. at 574 n. 2. reasoning from the intersections
> between the Gardner-Denver [**37] and Gilmer lines of case law, Judge
> Dorsey stated the district courts should seek a "more reasonable
> accommodation of the conflict between vitiating individual statutory rights
> and enforcing the express terms of a fairly negotiated contract that a per se
> rule barring enforcement of CBA mandated arbitration of individual
> statutory claims." *Id.* at 574. Analyzing the CBA before him in light of
> that more accommodating standard, Judge Dorsey concluded that the
> plaintiff's § 1981 claims must be submitted to arbitration as mandated by
> the CBA. *Id.*

Clark, et al v. VFI, Inc., 98 F. Supp. 2d 320, 332-3 (E.D.N.Y. 2000). Even more

recently, in Circuit City Stores, Inc. v. Saint Clair Adams, 532 U.S. 105, 121 S. Ct. 1302,

149 L.Ed.2d 234 (2001), the Supreme Court interpreted Section 1 of the Federal

Arbitration Act to apply to employment contracts and upheld a mandatory arbitration

clause in an employment application that effectively precluded an employee from filing a

lawsuit to resolve claims of unlawful discrimination.  See also, Williams v. SODEXHO,

Case No. 3:97CV2328, D. Conn. (March 16, 1999)(collective bargaining agreement can

require arbitration as the sole remedy).  If an employer can eliminate an employee's right

to a judicial forum in favor of arbitration, as these cases hold, it seems equally true that

the parties to a CBA can mutually agree to streamline the grievance process for claims

that are being fully adjudicated through another administrative process, especially where,

as here, the alternative process includes the right to judicial review.

Obviously, this issue is important with respect to the potential res judicata and/or

collateral estoppel effects of an arbitration decision on discrimination claims.  It should

be noted that if the OPM position is rejected, every employee who utilizes the arbitration

procedure and has his or her discrimination claims dismissed after an arbitration hearing,

and who then files for relief in federal courts, faces the very real prospect of having those

claims dismissed on summary judgment, according to the recent Second Circuit decision

in <u>Collins v. NYC Transit Authority</u>, 305 F.3d 113 (2d Cir. 2002).  This would not be true in cases which came through the CHRO, however, because of Conn. Gen. Sta. § 46a-85, which provides as follows:

> **Sec. 46a-85.  Complaint:  Effect of arbitration proceeding.**  (a) The submission of a claim to the arbitration process shall not bar a person from filing a complaint under this chapter.
>
> (b)      The commission and the presiding officer may admit in evidence any decision resulting from such arbitration and accord it the weight appropriate under the facts and circumstances of the case.

Thus, it is clear that the Plaintiff's position on this issue (again assuming <u>arguendo</u>, that she can raise it at all in this action) is simply wrong.

## CONCLUSION

For all of the foregoing reasons, the defendants are entitled to a judgment as a matter of law.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____

Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail: Joseph.Jordano@po.state.ct.us


_____

David M. Teed
Assistant Attorney General
Federal Bar # ct09102

## **CERTIFICATION**

The undersign does hereby certify that on this 7th day of June 2004, a true and

accurate copy of the foregoing was sent by first class United States mail, postage prepaid,

to:

>   Royce Vehslage
>   Genovese, Vehslage & LaRosa
>   500 Enterprise Drive
>   Rocky Hill, CT 06067

>   Brian Doyle
>   Ferguson & Doyle
>   35 Marshall Road
>   Rocky Hill, CT 06067

and hand delivered on June 8, 2004 to:

>   Cynthia Jennings
>   Barrister Law Group
>   211 State Street
>   Bridgeport, CT 06604

Joseph A. Jordano
Assistant Attorney General