UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEONYER M. RICHARDSON | : | Civil No. 3:02CV0625(AVC) |
|     Plaintiff | : | |
| | : | |
|     vs. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| COMMISSION ON HUMAN RIGHTS, | : | |
| OFFICE OF POLICY AND | : | |
| MANAGEMENT, CFEPE-AFT, | : | |
| AFL-CIO, ET AL. | : | |
|     Defendants | : | November 17, 2004 |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF SUMMARY JUDGMENT**

Unfortunately, the plaintiff's response to the defendants' summary judgment is woefully **void of any substantive evidence** that Richardson was discriminated against because of her **race** or **retaliated** against.[1]  Not only is the plaintiff's response filled with inaccuracies, conclusions unsupported by admissible evidence, and legal assertions without case authority, but the plaintiff has not, and cannot, show that her race or retaliation was a factor in the Executive Director's (a black female) decision to terminate her employment in 2001.  This is exactly the type of case which Rule 56 is designed to weed out and avoid a protracted, expensive, and harassing trial.  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert den. 474 U.S. 829 (1985).

---

[1] The defendants object to most of the plaintiff's exhibits on the grounds that they are inadmissible hearsay, speculation, lack foundation or are irrelevant.  The plaintiff cites to numerous emails or memorandums authored by the plaintiff or her union representative, and unsworn statements.  The court should carefully review the plaintiff's evidence and exclude inadmissible exhibits.

1

The overwhelming evidence adduced by the defendants shows that Richardson was insolent, rude, and insubordinate towards her supervisor, and that she was stubbornly incompetent even when errors in her work were pointed out to her. (Facts ¶¶ 24-34, 36-37, 42-47, 49-51, 53-55, 57-66 and 70). Instead of doing what she was told, she choose to be confrontational with her supervisor and other employees. Ultimately, the Executive Director felt that she had no choice but to fire her. Such a situation is regretful, but it is NOT DISCRIMINATION. The plaintiff's response of simply disagreeing with the defendants' evidence is insufficient to establish a pretext for discrimination or retaliation.

Although the plaintiff filed a Rule 56(a)(2) statement denying certain facts, she offered no affirmative evidence in resistance to summary judgment. Local Rule 56(a)(2) provides:

> "The Local Rule 56(a)(2) Statement must also include in a separate section entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried."

Moreover, the rule in this Circuit is that to properly resist summary judgment the Rule 56(a)(2) statement of disputed issues must cite to "admissible evidence." In re Salinardi v. Salindari, 304 B.R. 54, 2004 Bankr. LEXIS 102 (D. Conn 2004); Cutler v. Lewiston, 103 F.R.D. 172, 175-76 (D. Maine 1984).

The plaintiff's Rule 56(a)(2) statement denying certain facts and her memorandum contain numerous factual errors, leaps of logic, and unsupported legal contentions. So gross are some of the errors, that the defendants will use part of their reply brief to point out these matters so the court can fairly evaluate whether the plaintiff has truly established material issues of fact or simply reiterated her conclusory allegations which are insufficient to defeat summary judgment. Only material facts that influence the

outcome of the litigation matter.  Irrelevant or tangential factual disputes will not be counted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250-55 (1986).

As part of this preface, the defendants further point out that several issues raised in their summary judgment memorandum were not addressed by the plaintiff in her response.  For instance, the plaintiff does not refute the defendants' assertion that all of the plaintiff's state law claims are barred by the doctrine of sovereign immunity.  (Defendants' memorandum at p. 21).  Nowhere in the plaintiff's response is there any discussion about how defendants Bardot and Yelmini could be held personally liable (Defendants' memorandum at p. 30).  Also not addressed are the issues relating to Section 1983 being the exclusive remedy for constitutional violations (Defendants' memorandum at p. 23) or the Eleventh Amendment bar to the plaintiff's claim against Watts Elder in her official capacity (Defendant memorandum at p. 22), or plaintiff's claim in ¶ 64 of her complaint that the collective bargaining agreement violated Title VII.  (See Defendant's memorandum at pp. 36-41).  Instead, what the plaintiff presents are overly general legal assertions with scant, if any, actual evidence to establish a material issue of fact.  Therefore, the Court should consider these claims to be abandoned. Cutler v. Lewiston, 103 F.R.D. at 176.

> **PLAINTIFF'S ARGUMENT AGAINST COLLATERAL ESTOPPEL COMPLETELY MISSES THE POINT AND FAILS TO ADDRESS THE FACT THAT THE RULING BY THE APPEALS REFEREE IS *PER SE* EVIDENCE OF A LEGITIMATE NONDISCRIMINTORY REASON JUSTIFYING THE PLAINTIFF'S TERMINATION.**

In response to the argument that the plaintiff is collaterally estopped from re-litigating her dismissal from CHRO, plaintiff's counsel asserts that " . . . the plaintiff's unsatisfactory job performance issue was evaluated under the employment laws. The

Labor Referee did not determine whether or not there was discrimination." (Plaintiff's memorandum at p. 14). Such an argument misses the point entirely. Under the case of Collins v. New York Transit Authority, 305 F.3d 113 (2d Cir. 2003), the Second Circuit ruled that a decision of just cause by a neutral arbitrator is admissible as prima facie evidence of a "legitimate nondiscriminatory reason" for the employer's alleged adverse action. More importantly, such evidence attenuates the plaintiff's burden of proof to show that the arbitrator was wrong as a matter of fact. Id. at 119-120.

In a very detailed opinion, the state appeals referee in this case examined the plaintiff's employment history and more specifically, her conduct while employed by the CHRO. After listening to witnesses, reviewing exhibits and considering the arguments of counsel for Richardson, the independent appeals referee found just cause for her dismissal. More importantly, the referee found Richardson to actually be the wrongdoer, not the agency.

Other than the plaintiff's own self serving "unattested to" emails and memos she authored, the plaintiff has not refuted the referee's findings nor has she established that the findings were wrong as a matter of fact. Therefore, the plaintiff's simple assertion that the referee did not compare the plaintiff's job evaluations with those employees similarly situated makes no sense. It doesn't prove anything. More disturbing is the fact that the plaintiff hasn't offered any admissible evidence to refute the referee's findings.

**PLAINTIFF'S MEMORANDUM IS FILLED WITH ERRORS, MISSTSTATEMENTS OF FACTS AND UNSUPPORTED ASSERTIONS OF LAW.**

The plaintiff's memorandum is filled with inaccuracies or leaps of logic that fail to refute defendant's evidence that her conduct while employed by the CHRO was

insubordinate.  On page 11 of her memorandum, the plaintiff asserts that because she received some good service ratings in 1983, 1984, 1986, 1992 and 1999, that necessarily denotes that Richardson was discriminated against.  Such an assertion ignores the fact that none of those evaluations came from CHRO, and that it is only Richardson's conduct at CHRO which is at issue in this case.  She was employed by three different state agencies, all of which experienced behavioral problems with her conduct dating back to her employment with the Department of Environmental Protection.[2]  (Facts ¶¶ 4, 5, 13, 14 and 16).  On that same page, the plaintiff asserts that CHRO employee Kathy Stone was accused of the same work deficiencies as the plaintiff, but was not disciplined.  **But a review of plaintiff's exhibit 42, which she cites as evidence for this proposition, says nothing about Kathy Stone**. Exhibit 42 is simply Richardson's attempt to rationalize her mistakes and insubordination toward her supervisor by leveling accusations against Leanne Appleton.  The plaintiff does not show that Stone was similarly situated to Richardson. Nowhere is there evidence that Ms. Stone was insubordinate, confrontational, incompetent or rude to her supervisor even once, let alone on multiple occasions like Richardson.  Except for the fact that both were employed in the CHRO business office, Richardson and Stone were not similarly situated.   Stone was only involved in one incident with Richardson, but there were many other incidents which Richardson incited but which did not involve Stone in any way.

On page 11 of her memorandum the plaintiff asserts that former CHRO Acting Executive Director, Raymond Pech, gave certain testimony before the Department of

---

[2]     Conspicuously absent from the plaintiff's submission are the service ratings for 1981, 1982, 1985, 1987, 1988, 1989, 1990, 1991, 1992-1998, 2000 and 2001.  See defendants' exhibits 18-27.  However, it is plaintiff's conduct at CHRO which is at issue in this case.

Labor. **But exhibit 65, which the plaintiff cites as evidence of Pech's testimony, is a hearsay memo authored by the plaintiff, not by Mr. Pech**. Once again, this is another example of a misstatement of fact that is not supported by the evidence submitted by the plaintiff. Pech's testimony appears in defendants' Ex. 100 and it is not favorable to the plaintiff. (See defendants' Ex. 100, pp. 66-68).

On page 13 of her memorandum, plaintiff's counsel misstates that the defendants contend that the CHRO Merit Assessment of the Plaintiff's charge of discrimination is controlling. In fact, what the defendants contend is that the court can give substantial weight to the CHRO Merit Assessment of no reasonable cause. Conspicuously absent from the plaintiff's brief on this point is any case authority to refute the case law to the contrary. See, Kalanquin v. Heublien, 1999 U.S. Dist. LEXIS 11798 (D. Conn. 1999)(holding that preclusive effect attaches to a CHRO merit dismissal that can be appealed to state superior court).

With respect to the plaintiff's retaliation claim, on page 16 of her memorandum the plaintiff contends that she engaged in protected activity be complaining about discrimination prior to her first formal charge of discrimination filed against the CHRO on July 31, 2001. (Defendant Ex. 13). As with her other claims, the plaintiff does not cite to any evidence to support this unfounded assertion. More disconcerting is plaintiff's mistaken belief that because she complained about her supervisor, Appleton, that somehow shielded her from disciplinary action for misconduct. Complaining about a supervisor, even to the point of pursuing a formal charge of discrimination, did not insulate the plaintiff from discipline for work related conduct, including dismissal. See Mattson v. Caterpillar, 359 F.3d 885 (7th Cir. 2004); Jackson v. St. Joseph State Hospital,

840 F.2d 1387 (8th Cir. 1987) cert. den. 488 U.S. 892 (1988).  Speaking on this issue the Eight Circuit noted:

> Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers. The public and the state should not have to suffer waste of public funds in countenancing the arrogant and bizarre conduct exhibited by Jackson.

Id.  In Watts Elder's opinion, the plaintiff's behavior in the present case warranted discipline and termination, and her disagreement with the Executive Director's decision, standing alone, is certainly not evidence of discrimination or retaliation. There must be actual <u>ADMISSIBLE EVIDENCE UPON WHICH A TRIER OF FACT COULD CONCLUDE THAT DISCRIMINATION OR RETALIATION HAS OCCURRED.</u>  Plaintiff has produced none, because there is none.

Regarding the plaintiff's Section 1983 claim against defendant Appleton, the plaintiff asserts on page 25 of her memorandum that the defendants have attempted to shield Appleton by claiming that Watts Elder was the actual decision maker who terminated the plaintiff.  Plaintiff then asserts, without a single piece of evidence, that Appleton acted numerous times without guidance from Watts Elder.  How does the plaintiff know what Appleton said or didn't say to Watts Elder? Where is the actual evidence to support such a claim? There is none!  The defendants have produced evidence that Watts Elder was the decision maker, and plaintiff decided not to sue her personally.

Many of the plaintiff's responses to the defendants facts are speculative, irrelevant or are not supported by the evidence.  For example, defendants' fact ¶ 46 cite to a fact directly from the plaintiff's deposition:

7

> 46. Richardson believes that other black (not white) CHRO employees, James Davis, Lummie Span and Cheryl Gunn were treated better than her by Leanne Appleton.

The plaintiff's Rule 56(a)(2) response:

> 46. Deny. Plaintiff believes that other similarly situated white CHRO employees were treated differently than her. One case in point is the fact that Ms. Stone, a similarly situated white CHRO employee who held the checks that were deposited late was not disciplined nor reprimanded for not depositing these same checks. (See Exhibit 42). CHRO employees James Davis, Lummie Span and Cheryl Gunn were told that plaintiff was snitch and to stay away from her. This is because plaintiff questioned the accuracy of defendants accounting when it came to state reports. (See Exhibit 54).

However, plaintiff's exhibits 42 and 54 do not support in any way the facts stated in the plaintiff's response to this paragraph. These exhibits contain NO testimony from CHRO employees Span, Davis or Gunn. They do not even establish that Kathy Stone was similarly situated to the plaintiff in any material respect. Exhibit 42 is Richardson's own self serving statement to Watts Elder defending the way she did things. Exhibit 54 relates to something completely different; namely the plaintiff's failure to properly compute energy reports and her behavior towards her supervisor. These types of unsupported statements occur throughout the plaintiff's Rule 56(a)(2) response.

The above examples are but a few of the unfounded assertions or conclusions stated in resistance to summary judgment. There is no doubt that Richardson did not like being told what to do and decided that she would challenge her supervisor about every task. But as the court is fully aware, personality and management conflicts alone are certainly not evidence of discrimination.

### PLAINTIFF'S SUBMISSION DOES NOT ESTABLISH UNLAWFUL DISCRIMINATION, MUCH LESS SHOW PRETEXT.

A careful reading of the plaintiff's memorandum and her exhibits shows nothing more than her own conclusory allegations. In order to prove pretext, the plaintiff must do more than simply say that she disagrees with the defendant's legitimate

nondiscriminatory reason for any alleged adverse action.  The plaintiff must offer <u>admissible</u> <u>evidence</u> upon which a rational trier of fact could find that the proffered legitimate nondiscriminatory reason was false, and that more likely than not the employees' **race** was the real reason for the discharge.  <u>Woroski v. Nashua Corp</u>., 31 F.3d 105, 109-110 (2d Cir. 1994).  The evidence submitted by the defendants includes numerous letters of warning or other discipline involving the plaintiff.  In sworn affidavits, CHRO employees attest to the plaintiff's disrespectful and insubordinate behavior towards her supervisor at the CHRO as well as work place violence.  (Exs. 24, 25, 55).  Ironically, according to the plaintiff, these very same CHRO employees, all of whom are black or Hispanic, were treated better than her. (Facts, ¶ 46).  If other black employees were allegedly treated better than the plaintiff by defendant Appleton, how does that support a race discrimination claim. In fact, the plaintiff's own admission actually disproves her assertion that she was treated adversely <u>because of her race</u>.

Even assuming <u>arguendo</u> that Richardson and her supervisor, Appleton, did not get along, this is not evidence of discrimination.  Title VII is not a "bad acts" statute that seeks to micromanage business decisions.  As federal courts have recognized, an employer can fire an employee for a good reason, a bad reason, or no reason at all so long as the motivating reason is not an impermissible criteria such as race. <u>Bruno v. City of Crownpoint</u>, 950 F.2d 355, 364 (7th Cir. 1991); <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir. 1984).

> An employer's decision does not have to be wise, prudent or logical;
> it merely has to be explained clearly and applied indiscriminately. . . .
> "If you honestly explain the reasons behind your decision, but the
> decision was ill-informed or ill considered, your explanation is not pretext."

<u>Pollard v. REA Magnet Wire, Co. Inc.</u>, 824 F.2d 557, 559 (7th Cir. 1987).

The plaintiff submission in resistance to summary judgment does not prove pretext. At best, it amounts to Richardson's defense of her actions by asserting that Appleton's style was harsh. In support of her claim, the plaintiff offers the "unsworn" statements written by CHRO employees at the urging of their biased union representative. (Plaintiff's Ex. 20). But all these statements prove is that certain employees objected to Appleton's management style. Other employees saw the same matters to be completely the opposite. ( Defendants' Exs. 24-27).

### PLAINTIFF HAS NOT PROVED THAT DEFENDANT APPLETON WAS "PERSONALLY INVOLVED" IN A CONSTITUTIONAL VIOALTION.

Under § 1983, a defendant's "personal involvement" in an alleged deprivation of constitutional rights is a prerequisite to an award of damages. See, e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Alfara Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987). A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983, when he or she has directly participated in the infraction. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)(emphasis added). A plaintiff must thus allege a tangible connection between the acts of the defendant and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986).

The defendants remind the court that the plaintiff must prove a constitutional violation against each individual defendant, including defendants Appleton, Yelmini and Bardot. Accordingly, the burden is upon the plaintiff to show how each defendant was personally involved in a constitutional violation sufficient to impose personal liability. The plaintiff has not even addressed by way of a 56(a)(2) statement of disputed facts or in her memorandum, any alleged wrongdoing by defendants Yelmini and Bardot. At best, the plaintiff's claim against defendant Appleton is that she felt that Appleton singled her

10

out for unfair treatment. But the plaintiff has no evidence that Appleton had any personal involvement in a "constitutional" violation. It cannot be repeated often enough that a difference of opinion or management style does not rise to the level of a constitutional violation. The plaintiff has offered no actual evidence showing that she was treated differently than similarly situated white CHRO employees. At best, the plaintiff asserts that she was treated differently than CHRO employee Kathy Stone, in one single solitary situation, but she omits any evidence upon which to draw such an inference.

### THE PLAINTIFF CANNOT AMEND HER COMPLAINT AT THIS LATE DATE TO ADD CYNTHIA WATTS ELDER IN HER INDIVIDUAL CAPACITY.

It is established law that for a person to be personally liable under Section 1983, the plaintiff must plead and prove personal involvement in a constitutional deprivation. Precisely because the plaintiff cannot prove that defendant Appleton made the decision to terminate the plaintiff, plaintiff's counsel now wants to amend the complaint to change the action against the former CHRO Executive Director to a suit in her personal capacity.[3] Adding defendant Watts Elder in her personal capacity is the equivalent of filing a new lawsuit against Watts Elder, which would require proper notice under the requirements of Due Process, and this has not occurred. Eaglesmith v. Ward, 73 F.3d 857, 860 (9th Cir. 1995).

Not only does the three year statute of limitations bar such a claim, but it would be unfairly prejudicial to Watts Elder at this juncture to add a new claim. Atchinson v. District of Columbia, 73 F.3d 418, 427 (D.D.C. 1996)(amendment to sue official personally at late juncture would be manifestly prejudicial). Watts Elder has had no

---

[3] Cynthia Watts Elder was sued only in her official capacity. This case has been pending for over two years. The last adverse action (termination) occurred in October 2001, more than three years ago. The statute of limitations bars any claim at this late juncture.

11

notice of a claim for personal liability. Discovery is long closed and now, having decided that she cannot prevail against defendant Appleton, the plaintiff wants to amend the complaint. This very issue was addressed in the Atchinson case, in which the trial court decision denying the request to amend was upheld on appeal.

Moreover, a careful review of the plaintiff's "evidence" shows that her complaints while employed at the CHRO focused on her relationship with the Business Manager, Leanne Appleton. There is no evidence that Watts Elder, herself a black female, disciplined the plaintiff because of her race or in retaliation for complaining. In fact, the evidence shows that it was Watts Elder herself who hired Richardson at CHRO, and that in response to Richardson's complaint, Watts Elder took the extraordinary step of hiring an outside personnel consultant to investigate whether defendant Appleton had acted inappropriately towards Richardson. The consultant concluded just the opposite, that it was Richardson who behaved inappropriately. (Facts, ¶ 47). The fact that Richardson disagrees with certain decisions is not evidence of discrimination.

### THE PLAINTIFF CANNOT PROVE A CLAIM OF A RACIALLY HOSTILE WORK ENVIRONMENT.

The plaintiff has offered no evidence of a "racially" hostile work environment and her claim fails for the simply reason that her work environment was not permeated with racial or ethnic ridicule sufficient to alter the conditions of her work. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Oliver v. University of Connecticut Health Center, 292 F. Supp. 2d 398 (D. Conn. 2003).

**Hostile work environment**

While there is no fixed number of incidents that a person must endure in order to establish a hostile work environment, the court must view the circumstances in totality, examining the nature, severity and frequency of the conduct . Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).  Relevant factors include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).  A plaintiff must also prove that the work place was *so severely permeated* with discriminatory intimidation, ridicule, and insult  that the terms and conditions of her employment were altered. Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001);  Oliver v. University of Connecticut Health Center, 292 F. Supp. 2d at 409.

The test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive the environment to be abusive. As a general rule the incidents must be more than episodic, they must be sufficiently continuous and concerted in order to be deemed pervasive. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997); Diggs v. Town of Manchester, 303 F. Supp. 2d 163 (D. Conn. 2004).

The requirement that an environment be permeated with **racial ridicule** to a level that it ACTUALLY alters a plaintiff's work situation cannot be understated. This law was designed to root out those instances in which a person is truly immersed in a racially abusive situation. It was intended for use as an offensive weapon against employers to

challenge business decisions that have no connection to race simply because the employer happens to be in a protected class. For this reason, the district courts in Connecticut have rejected cases in which actual racial epithets, jokes, and comment were directed at a plaintiff because they were too isolated and sporadic to constitute a collectively hostile environment.

For instance, Diggs v. Town of Manchester, 303 F. Supp. 2d 163 (D. Conn. 2004), the plaintiff, a fireman, was terminated for misconduct. In response, he brought an action in 2002 claiming that he was subjected to a racially hostile work environment. The plaintiff's evidence of a racially hostile work environment consisted of an incident in 1988 when someone made a reference to "niggers," a complaint of discrimination he had filed in 1989, an incident in 1994 when a white firefighter accused the plaintiff of being a racist, a second altercation with another firefighter about an alleged racial comment and a generally hostile environment. The district court on the motion for summary judgment ruled that such evidence was insufficient to support a hostile environment claim. Id. at 181-82. See also, Martin v. Town of Westport, 2004 U.S. Dist. LEXIS 15340 (D. Conn. 2004)(one racial remark to plaintiff and one disciplinary incident not sufficient).

In the present case, there is literally NO EVIDENCE of any racial comments or ridicule. Yes, Leanne Appleton did consider the plaintiff's behavior to be incompetent and insubordinate. But there is no evidence of racial harassment. In fact. Richardson testified that other minority employees were treated better than her. (Facts, ¶ 46). So much for a racially hostile work environment.

Regretfully, Richardson's case, like so many other lawsuits, is a thinly disguised attempt to litigate legitimate business decisions that she disagrees with, having nothing to

14

do with race or retaliation. Richardson history of insubordinate behavior and her "quick draw" to play the race card when she knows that she has overstepped, is regretful. This is the type of case that the court should reject.

## CONCLUSION

The evidence offered by the defendants, combined with the plaintiff's inadequate response, requires that summary judgment be granted in this case. All the plaintiff has offered in resistance to summary judgment are her own conclusions and accusations. There is simply no evidence of race discrimination or retaliation. The plaintiff's failure to adduce affirmative evidence as required by Local Rule 56(a)(2) makes her objection to the defendants' facts woefully inadequate to withstand summary judgment. It certainly does not refute the defendants' evidence which shows a legitimate nondiscriminatory reason for defendant Watts Elder's decisions. Therefore, the motion for summary judgment should be granted.

          DEFENDANTS,

          RICHARD BLUMENTHAL
          ATTORNEY GENERAL

BY: _____
          Joseph A. Jordano
          Assistant Attorney General
          Federal Bar # ct21487
          55 Elm Street, P. O. Box 120
          Hartford, CT 06141-0120
          Tel: 860-808-5340
          Fax: 860-808-5383
          E-mail: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the 17th day of November, 2004, a true and accurate copy of the foregoing was sent by United State mail, postage prepaid, to the following:

Cynthia R. Jennings
The Barrister Law Group
211 State Street
Bridgeport, CT 06604

Royce Vehslage, Esq.
Genevse, Vehslage & LaRose
500 Enterprise Drive
Rocky Hill, CT  06067

Brian A. Doyle, Esq.
Ferguson, Doyle & Springer
35 Marshall Road
Rocky Hill, CT  06067
Counsel for Defendant A&R Employees' Union

                                                  Joseph A. Jordano
                                                  Assistant Attorney General