**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LEONYER M. RICHARDSON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV625(AVC) |
| VS. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| CONNECTICUT  COMMISSION ON | : | |
| HUMAN RIGHTS, OFFICE POLICY | : | |
| AND MANAGEMENT, CFEPE-AFT, | : | |
| AFL-CIO, ET AL., | : | |
| Defendants. | : | July 31, 2005 |

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION**
**FOR CORRECTED JUDGMENT**

The plaintiff, Leonyer M. Richardson (hereinafter, the "Plaintiff"), hereby submits

her response to defendant's Objection to Plaintiff's Motion for Corrected Judgment

dated July 11, 2005.

**I.    BACKGROUND**

Plaintiff claims that her union, the ADMINISTRATIVE AND RESIDUAL

EMPLOYEES UNION, LOCAL 4200, CFEPE, AFT, AFL-CIO ("Union") a labor

organization and plaintiff's exclusive collective bargaining representative, retaliated

against plaintiff, unfairly represented her and  colluded with the defendants to deprive plaintiff of her rights to due process and equal protection of the law.   (Complaint, ¶ 10). Plaintiff filed the instant complaint on April 9, 2002 against the Union and the State of Connecticut Commission on Human Rights and Opportunities ("CHRO"), the office of Policy and Management ("OPM"), Leanne Appleton ("Appleton"), Linda Yelmini ("Yelmini"), Donald Bardot ("Bardot") and Cynthia Watts-Elder ("Watts-Elder").

In Count One, plaintiff charged CHRO with discrimination and retaliation against her based on her race and color, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA").

In Count Two, plaintiff charged Watts-Elder, in her official capacity, claiming that Watts-Elder discriminated and retaliated against the plaintiff, in violation of 42 U.S.C. §§ 1983 and 1981.

In Count Three plaintiff charges Title VII and CFEPA violations against OPM, including discrimination and retaliation (Complaint ¶ 62).  Plaintiff also charges that in negotiating and executing provisions of a collective bargaining agreement that allowed the State, through OPM, to retaliate against employees, including Ms. Richardson, who exercised their rights to file discrimination complaints with the CHRO and the U.S. Equal Employment Opportunity Commission ("EEOC"), the defendant OPM has discriminated

against plaintiff, and other similarly situated State employees, because they previously opposed and filed complaints of discrimination with those agencies. (Complaint ¶ 64). Count Three further charges that OPM, in continuing to place plaintiff under its supervision after her transfer to CHRO and in influencing CHRO managers to take adverse actions against her, the defendant, OPM, has discriminated against plaintiff and aided and abetted CHRO's discrimination, because she previously opposed and filed complaints of discrimination (Complaint ¶ 63). In Count Three, plaintiff further claims that in retracting its decision to reinstate plaintiff's employment with the State and its decision to transfer her to another agency and in challenging the arbitrability of plaintiff's grievances because she had filed complaints of discrimination and retaliation with the CHRO and the EEOC, the defendant, OPM, has discriminated against plaintiff and aided and abetted CHRO's discrimination, because she previously opposed and filed complaints of discrimination (Complaint ¶ 65).

Count Four brings charges against defendant Bardot for his retraction of his decision to reinstate plaintiff's employment with the State, his decision to transfer plaintiff to another agency and his decision to challenge the arbitrability of plaintiff's grievances because plaintiff filed complaints of discrimination and retaliation with the CHRO and EEOC (Complaint ¶ 70). Plaintiff further claims that Bardot's decisions

occurred on the basis of direct instructions from his supervisor, the defendant Yelmini (Complaint ¶ 71).   Defendant Bardot is charged with discrimination against plaintiff because she previously opposed and filed complaints of race and color discrimination. Plaintiff claims that defendant Yelmini and Bardot's actions were under color of law and violated plaintiff's rights to be treated the same as white citizens as protected by 42 U.S.C. § 1981, her property rights to continued employment and her rights to due process and equal protection of the laws as protected by the Fourteenth Amendment to the U.S. Constitution as enforced through 42 U.S.C. § 1983 and Article First, sections 8 and 20 of the Connecticut Constitution (Complaint ¶ 71).   Count Five is directed specifically at the Union, and alleges violations of Title VII, CFEPA, §§ 1981 and 1983, and a breach of the duty of fair representation.  Plaintiff claims that in negotiating and executing a collective bargaining agreement that allowed the State, through OPM, to retaliate against employees, including plaintiff, who exercised their rights to file discrimination complaints with the CHRO and the EEOC, the defendant Union has discriminated against plaintiff, and other similarly situated Union members, and aided and abetted OPM's discrimination, because they previously opposed and filed complaints of discrimination with those agencies (Complaint ¶ 78).

In Count Five, plaintiff further claims that in withdrawing its appeal of plaintiff's grievances to arbitration because she had filed complaints of discrimination and retaliation with the CHRO and the EEOC, the defendant Union has discriminated against plaintiff because she previously opposed discrimination and filed these discrimination complaints (Complaint ¶ 70).  Plaintiff claims that the Union's actions were arbitrary and capricious and denied plaintiff the rights afforded to other Union members who did not file complaints of discrimination (Complaint ¶ 80).  Plaintiff further claims that because the Union's actions colluded with the State, those actions occurred under color of law (Complaint ¶ 81).  Plaintiff's claim is that the Union's actions violated plaintiff's rights to be treated the same as white citizens as protected by 42 U.S.C. § 1983 and Article First, §§ 8 and 20 of the Connecticut Constitution (Complaint ¶ 82). Plaintiff further claims that the Union's actions also violated section 704 of Title VII, 42 U.S.C. §2000e-3, C.G.S. §§46a-58(a), 60(a) (4) and (5), as well as the Union's duty of fair representation toward plaintiff as protected by Connecticut law (Complaint ¶ 83). Plaintiff grieved her adverse employment actions under applicable collective bargaining agreement (the CBA).  On October 22, 2001, plaintiff attended a third step hearing regarding grievances with her Union representative.  The defendant, Bardot, presided over that third step meeting (Complaint ¶ 41).  At the meeting, Bardot agreed to

reinstate plaintiff's employment with the State and agreed to transfer plaintiff from the CHRO to a different State agency (Complaint ¶ 42).  On or about October 27, 2001, at a subsequent meeting, Bardot informed plaintiff that he had discovered that plaintiff had filed and amended CHRO and EEOC complaints on July 30, 2001, October 3, 2001 and October 25, 2001 to include adverse employment actions that were part of the grievances before him and that would be subject to arbitration under the Union contract (Complaint ¶ 44).  Bardot also informed plaintiff that because she had filed these complaints of discrimination and retaliation, on instructions from his supervisor, the defendant Yelmini, he was denying her grievances and he was refusing to reinstate her employment with the State (Complaint ¶ 45).  After Bardot rescinded his agreement to reinstate plaintiff, she requested that the Union appeal her grievances to arbitration under Article 15, section 6 of the Union contract (Complaint ¶ 46).

The Union representative, Warren Cullen, informed plaintiff that the Union was withdrawing its appeal of her grievances to arbitration because she had amended her CHRO and EEOC complaints to include adverse employment actions that would be subject to the arbitration (Complaint ¶ 47).  Cullen also informed plaintiff that, because she had amended her CHRO and EEOC complaints to include adverse employment actions that would be subject to arbitration, Bardot and OPM had informed the Union

that they would challenge the arbitrability of those grievances under Article 15, section 10(a)(2) of the Union contract with the State.  This section of the Union contract allegedly prohibits arbitration of grievances where the subject matter of the grievances are also the subject matter of a CHRO and/or EEOC complaint (Complaint ¶ 48).

Cullen also informed plaintiff that the Union believed that, because plaintiff had amended her CHRO and EEOC complaints to include adverse employment actions that would be subject to the arbitration, her grievances were not arbitrable under Article 15, section 10(a)(2) of the Union contract (Complaint ¶49).  On April 1, 2003, Robert L. Sanders, Director of the Boston Area Office of the U.S. Equal Employment Opportunity Commission (EEOC), made a determination that "Evidence obtained during the Commission's investigation showed that Article 15, Section 10, of the Union's collective bargaining agreement provided that *"disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the [CCHRO] arising from the same common nucleus of operative fact."*  EEOC's Determination was that "This clause penalizes an employee by denying that employee the right to arbitrate a claim under the collective bargaining [agreement] if the employee engages in the *"protected conduct"* of filing a charge of discrimination with the CCHRO.  *"Based on this analysis, I have determined that*

***Article 15, Section 10 of the collective bargaining agreement violates Title VII of the Civil Rights Act of 1964, as amended, as applied to Charging Party and any similarly situated employees."*** (Exhibit 1-EEOC <u>Determination</u> as to the Union, and Exhibit 2-EEOC <u>Determination</u> as to OPM).

It is not disputed that the Union did not file a Motion for Summary Judgment.  In fact, in June 2004, all named defendants *except* the Union filed a Motion for Summary Judgment regarding the instant Complaint.

In an opinion dated March 31, 2004, the Court granted the motion for Summary Judgment as to all named defendants in Judge Covello's decision dated March 31, 2005.  These named defendants did not include the Union.  In its decision, Under Count Three:  Title VII Violations as Against the OPM, the Court held that the CBA provision agreeing not to arbitrate grievances that were also filed as administrative complaints did "not violate the F[ederal] A[rbitration] A[ct].:  (Court's Opinion, p. 23.)  The Court further held that the enforcement of this collectively bargained provision could "not give rise to an inference [of] discriminatory animus."  <u>Id.</u> At 23.  Judgment in favor of all defendants was entered by the Clerk on March 31, 2005.

II.     **LEGAL ARGUMENT**

     A.     **Rule 54(b) IS Applicable in the Instant Case**

Defendant argues that "The sole purpose of a Rule 54(b) order is to provide an opportunity to appeal claims affecting some but not all of the parties or some but not all of the issues." Orion Financial of S.D. v. American Foods Group, 203 F.3d 1047, 1049 (8th Cir. 2000).  In the instant case, plaintiff's claim is that all defendants listed in this case did not move for summary judgment.  The Union does not contest the fact that it never moved for summary judgment in this case, or that the Court's opinion does not specifically address Count V, which is directed to the Union (Objection to Plaintiff's Motion for Corrected Judgment p. 8).  Further, it is plaintiff's contention that all defendants listed in the instant case did not move for summary judgment.  (Plaintiff's Motion for Corrected Judgment p. 2).  The sole purpose of a Rule 54(b) order is to provide an opportunity to appeal claims affecting some but not all of the parties or some but not all of the issues.  Id at 1049.  In this case, there are multiple parties named in the caption of this case.  In the Ruling on the Defendant's Motion for Summary Judgment dated March 31, 2005, The Honorable Judge Alfred V. Covello, stated that "The defendants, State of Connecticut Commission on Human Rights ("CHRO"), Office of Policy and Management ("OPM"), Leanne Appleton, and Cynthia Watts-Elder now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment[;]."  Here, Judge Covello expressly named and listed the defendants

addressed in the Summary Judgment Motion before him.     The Administrative and Residual Employees Union, Local 4200, CFEPE, AFT, AFL-CIO ("Union") did not file a Motion for Summary Judgment, and the Court did not address Count V of the Complaint.  Count V was the only count which specifically addressed the claims plaintiff was bringing against the Union.  (Complaint ¶ 15).

### B.     The Union did not file a Motion for Summary Judgment

It is undisputed that the Union did not even file a Motion for Summary Judgment. (Objection to Plaintiff's Motion for Corrected Judgment p. 3).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment [is proper when] there are no genuine issues of material fact and they are entitled to judgment as a matter of law. (Ruling on the Defendant's Motion for Summary Judgment p. 1-2).  "If plaintiff fails to raise a triable issue of fact as to whether the defendant's offered explanation is pretextual, summary judgment in favor of defendant is appropriate."  Holt v. KMI-Continental, inc., 95 F.3d 123, 132 (2d Cir. 1996).  "In order to survive a motion for summary judgment, plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's sex or race was the real reason for the discharge."  De La Cruz v. New York City Human Resources Admin. Dep't of Soc.

Servs., 82F.3d 16, 20-22 (2d Cir. 1995).  In this case, the Union did not file a Motion for Summary Judgment, and therefore, they were not afforded the full analysis of the court relative to the issues of law specific to the Union.   The Union, had they filed for Summary Judgment, would have had to disclose to the Court, the EEOC Determination by Robert L. Sanders, Director of the U.S. Equal Employment Opportunity Commission (EEOC) Boston Area Office, dated April 1, 2003.   In this Determination, the EEOC states that "***Evidence obtained during the Commission's investigation showed that Article 15, Section 10, of the collective bargaining agreement provided that 'disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the [CCHRO] arising from the same common nucleus of operative fact.''***"  This clause penalizes an employee by denying that employee the right to arbitrate a claim under the collective bargaining agreement if the employee engages in the protected conduct of filing a charge of discrimination with the CCHRO/EEOC.  Regional Director Saunders goes on to say,  "***based on this analysis, I have determined that Article 15, Section 10 of the collective bargaining agreement violates Title VII of the Civil Rights Act of 1964, as amended, as applied to Charging Party and any similarly situated employees.***"  (U. S. Equal Employment Opportunity Commission Determination of

Robert L. Sanders, Director, Boston Area Office pp 1-2).  The Union might also have been required to present to the court, information relative to the EEOC Determination in light of the fact that "Disclosure of information obtained by the Commission [EEOC] during the conciliation process will be made in accordance with 706(b) of Title VII and 1601.26 of the Commission's Procedural Regulations." (U. S. Equal Employment Opportunity Commission Determination of Robert L. Sanders, Director, Boston Area Office pp 2).  Clearly, the Court was either not aware of an EEOC determination against the Union, or else the Court erred in considering the EEOC determination in its decision. In light of the fact that the Court included information relative to the CHRO decision, which went against the plaintiff (Ruling on the Defendant's Motion for Summary Judgment pp 3, 6, 7, 8, and 9) and information relative to the Unemployment Compensation ruling that was not in plaintiff's favor either (Ruling on the Defendant's Motion for Summary Judgment p 9).   Had the information regarding the EEOC ruling been disclosed to the Court in any of the documents, up to and including [Union] defendant's  most recent Objection to Plaintiff's Motion for Corrected Judgment, dated July 11, 2005, it might have given the Court additional information to take into consideration relative to the claims of the plaintiff.

The EEOC Determination would certainly have provided the Court with relevant and material evidence to analyze in accordance with Title VII claims brought by plaintiff. The standard used by the Court to decide whether or not a motion for summary judgment should be granted, includes the fact that "The court resolved all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. Denied, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). If, however, the Union was granted summary judgment without the requisite analysis from the court, there would be no need to disclose or present information relative to the EEOC Determination.

### C.     Legal Standard-Final Judgment Under Rule 54(b)

The 2nd Circuit Court of Appeals has held that there are three prerequisites to the entry of final judgment under Rule 54(b). Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1081 (2d Cir. 1992).

(1) Multiple Claims or multiple parties must be present. In the instant case, there are seven named parties (Complaint p. 1), and five separate counts in the complaint. (Complaint pp 10-16).

**(2)** At least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291.  In this case, the claims of four of the parties were decided by the Court (Ruling on the Defendant's Motion for Summary Judgment p. 2).  The Court granted the Defendant's Motion for Summary Judgment against all parties mentioned in the Decision.  Those parties were "[t]he defendants, State of Connecticut Commission on Human Rights ("CHRO"), Office of Policy and Management ("OPM"), Leanne Appleton, and Cynthia Watts-Elder

**(3)** The district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment.  In this case, there was no 'express determination that there is no just reason for delay.'  (Ruling on the Defendant's Motion for Summary Judgment pp. 1-27)

**D.    The Court did not mention the Union as a party in their Ruling**

Throughout the Ruling on the Defendant's Motion for Summary Judgment, the Court never mentioned the Union as a party.  The Court mentioned that plaintiff had filed a complaint with CHRO against her Union, and that the CHRO complaint was dismissed (Ruling on the Defendant's Motion for Summary Judgment p. 8)  Relative to Count Three, the Court again mentions the Union, however, not as a party in this action,

but in relationship to OPM.  (<u>Ruling on the Defendant's Motion for Summary Judgment</u> pp. 22 and 23).

### E.    The Court did Not Address Count V in their Ruling

The Court was silent on Count V in the Ruling on the Defendant's Motion for Summary Judgment.  The Court did not regard the Union as a party in this action, and the Court did not address or rule on all the claims in the Complaint.  Count V, a claim specific to the Union, was never decided on and never addressed by the Court.  No mention was made of the Union's claim throughout the entire decision.  (<u>Ruling on the Defendant's Motion for Summary Judgment</u> pp 10-27).

### F.    The Office of the Attorney General does Not Represent the Union

The Union is represented by private counsel, specifically Brian A. Doyle, and James M. Sconzo and Jonathan C. Sterling.  (Objection to Plaintiff's Motion for Corrected Judgment p. 11).

### G.    The Union does Not have Eleventh Amendment Immunity

The Union does not have sovereign immunity, as does the State of Connecticut CHRO and OPM, under the Eleventh Amendment of the U.S. Constitution.  "…the Eleventh Amendment generally prohibits suits against state governments in federal

court." <u>Richardson v. New York</u>, 180 F.3d 426, 447-48 (2d. Cir. 1999) (citing <u>Pennhurst State School & Hosp. V. Halderman</u>, 465 U.S. 89 (1984).

### H.    The Union Failed to Mention the EEOC Ruling Against the Union to the Court

The March 31, 2005 <u>Ruling on the Defendant's Motion for Summary Judgment</u> is silent on the EEOC Determination, issued on April 1, 2003, against both the Union and against OPM.  (<u>Ruling on the Defendant's Motion for Summary Judgment</u> pp 1-27).  The Union's Objection to Plaintiff's Motion for Corrected Judgment dated July 11, 2005, is also silent on this the EEOC Determination against the Union.

### I.    The Court Failed to Address the EEOC Ruling Against the Union

The Court was silent on the EEOC Determination against the Union in this matter.  The EEOC Determination never became an issue, nor did it play into any of the analysis conducted by the Court.  No Union claims were addressed by the Court, and the Union itself was not regarded or treated as a party in the March 31, 2005 <u>Ruling on the Defendant's Motion for Summary Judgment</u> (pp 1-27)

### J.    The Court Failed to Address the EEOC Ruling as to OPM

The Court was silent on the EEOC Determination against OPM in this matter. The EEOC Determination never became an issue, nor did it play into any of the analysis conducted by the Court relative to OPM.  The Court erred in not considering the EEOC

determination relative to the summary judgment analysis.  (<u>Ruling on the Defendant's</u>

<u>Motion for Summary Judgment</u> pp 1-27).

### K. The Court did not Direct the entry of a Final Judgment as to the Union

The Court was silent as to the Union.  No claims were addressed or resolved

relative to the Union in the Court's Ruling, and the Union was not treated as a party in

the instant case.  No analysis was conducted relative to the Union, and there was no

Directed entry of a Final Judgment as to the Union by the Court. (<u>Ruling on the</u>

<u>Defendant's Motion for Summary Judgment</u> (pp 1-27)

### L. The Court did Not Direct Entry of a Final Judgment as to Count V of the Complaint

No claims were addressed or resolved relative to the Union in the Court's Ruling,

and the Union was not treated as a party in the instant case.  No analysis was

conducted relative to Count V, which specifically addressed claims against the Union,

and there was no Directed entry of a Final Judgment as to the Union by the Court

relative to Count V. (<u>Ruling on Defendant's Motion for Summary Judgment</u> (pp. 1-27)

### M. Summary Judgment was Expressly Granted Only for Counts I, II, III and IV

FRCP § 54(b), Judgment Upon Multiple Claims or Involving Multiple Parties,

states that "…when multiple parties are involved, the court may direct the entry of a final

judgment as to one or more but fewer than all of the claims or parties only upon an

***express determination*** (emphasis ours) that there is no just reason for delay and upon an express direction for the entry of judgment.  In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to *any* of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."  Fed. R. Civ. P. 54(b).  The sole purpose of a Rule 54(b) order is to provide an opportunity to appeal claims affecting some but not all of the parties or some but not all of the issues.  Orion Financial Corp. v. American Foods Group, 201 F.3d 1047 (8th Cir. 2000).

In the instant case, the March 31, 2005 Ruling by Judge Covello, expressly grants summary judgment as to Count I; Count II; Count III; and Count IV of the complaint only.  Count V of the complaint, was ***not*** expressly addressed in the Court's decision.  The Court in this case, clearly ruled on some but not all of the parties, as the Union has not been ruled on as a party, and some but not all of the issues, wherein Count V was an issue that was not ruled on by the Court in its Ruling on the Defendant's Motion for Summary Judgment.

**N.    The Claims and the Rights and Liabilities of all of the Parties have not been Adjudicated.**

In the instant case, the March 31, 2005 Ruling by Judge Covello, expressly grants summary judgment as to Count I; Count II; Count III; and Count IV of the complaint only.  Count V of the complaint, was *not* expressly addressed in the Court's decision.  (Ruling on the Defendant's Motion for Summary Judgment pp 1-27).

III.    **Rule 54(b) Does Not Fail Because it is Timely**

The 2nd Circuit Court of Appeals has held that there are three prerequisites to the entry of final judgment under Rule 54(b). <u>Ginett v. Computer Task Group, Inc.,</u> 962 F.2d 1085, 1081 (2d Cir. 1992).

(1)    Multiple Claims or multiple parties must be present.  In the instant case, there are seven named parties (Complaint p. 1), and five separate counts in the complaint. (Complaint pp 10-16).

(2)    At least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291.  In this case, the claims of four of the parties were decided by the Court (Ruling on the Defendant's Motion for Summary Judgment p. 2).  The Court granted the Defendant's Motion for Summary Judgment against all parties mentioned in the Decision.    Those parties were "[t]he defendants, State of

Connecticut Commission on Human Rights ("CHRO"), Office of Policy and Management ("OPM"), Leanne Appleton, and Cynthia Watts-Elder

(3)     The district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment.  In this case, there was no 'express determination that there is no just reason for delay.'  (Ruling on the Defendant's Motion for Summary Judgment pp 1-27).  This prong of the three part test fails, because the Court failed to 'make an express determination that there is no just reason for delay.'  This third prong contains mandatory language.  The directive is that the Court "must" make an express determination that there is 'no just reason for delay.'  The Court did not include this mandatory language in the Ruling on the Defendant's Motion for Summary Judgment (pp. 1-27).  Because the Court was not compliant with the third prong, there is no "final Judgment" under Rule 54(b).  If there is no final judgment in this matter, then judgment could not have been entered, and the filing of a Rule 54(b) motion to correct the judgment, was timely.  Further, Rule 54(b) does not specify a deadline for filing motions seeking judgments.

(Baicker-McKee, Janssen and Corr. Federal Civil Rules Handbook, (Thompson-West 2005) at 852.

**C.     The Claim in the Motion for Corrected Judgment did not Cite Rule 60.**

Rule 60(a) states that ***"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."*** Rule 60(a) further provides that ***"During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter with leave of the appellate court."*** As the Motion for Reinstatement to the Appellate Court has been granted, and the case has since been re-docketed, if we choose to bring a claim under Rule 60, we will seek leave of the Appellate Court. In this case, however, plaintiff's claim was not that a clerical mistake was made in the judgment. Plaintiff's claim is that that court erred in its substantive analysis of the case, and that the Court erred in granting summary judgment to the defendants. The law in this case was brought under Title VII and the fact that the Union breached its duty to fair representation. The plaintiff did not cite to Rule 60. Even if the court was correct in its ruling under the Federal Arbitration Act (FAA), it failed to rule on

Title VII matters relative to the Union. The court was silent on the Title VII issue as relates to the Union, as well.  Further, the Union did not file for summary judgment, the court in its analysis made no mention of the Union and now, the Union is claiming that the decision on summary judgment granted to the State, should be imputed to them.  The Union should not be granted summary judgment in this matter.  The Union should be subject to the same level of analysis that the Court engaged in relative to the State's Motion for Summary Judgment.  Summary judgment should not be granted to the Union based on the foregoing argument.

### D.    The Court has Erred in its Decision on Defendant's Motion for Summary Judgment.

The Union does not contest the fact that it never moved for summary judgment in this case, nor does it contest the fact that the Court's opinion does not address Count V of the complaint, which is directed at the Union.  (Objection to Plaintiff's Motion for Corrected Judgment p. 8).  Plaintiff claims that there were errors of both law and of fact in the Court's <u>Ruling on the Defendant's Motion for Summary Judgment</u>.  The sole purpose of a Rule 54(b) order is to provide an opportunity to appeal claims affecting some but not all of the parties or some but not all of the issues.  <u>Id</u> at 1049.  In this case, there are multiple parties named in the caption of this case.  In the <u>Ruling on the Defendant's Motion for Summary Judgment</u> dated March 31, 2005, The Honorable

Judge Alfred V. Covello, stated that "The defendants, State of Connecticut Commission on Human Rights ("CHRO"), Office of Policy and Management ("OPM"), Leanne Appleton, and Cynthia Watts-Elder now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment[;]." Here, Judge Covello expressly named and listed the defendants addressed in the Summary Judgment Motion before him.    The Administrative and Residual Employees Union, Local 4200, CFEPE, AFT, AFL-CIO ("Union") did not file a Motion for Summary Judgment, and the Court did not address Count V of the Complaint. Count V was the only count which specifically addressed the claims plaintiff was bringing against the union. (Complaint ¶ 15).

"In order to survive a motion for summary judgment, plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's sex or race was the real reason for the discharge." De La Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs., 82F.3d 16, 20-22 (2d Cir. 1995). In this case, the Union did not file a Motion for Summary Judgment, and therefore, they were not afforded the full analysis of the court relative to the issues of law specific to the Union. The Union, had they filed for Summary Judgment, would have had to disclose to the Court, the EEOC Determination by Robert L. Sanders, Director of the U.S. Equal

Employment Opportunity Commission (EEOC) Boston Area Office, dated April 1, 2003. In this Determination, the EEOC states that "Evidence obtained during the Commission's investigation showed that Article 15, Section 10, of the collective bargaining agreement provided that 'disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the [CCHRO] arising from the same common nucleus of operative fact.'  This clause penalizes an employee by denying that employee the right to arbitrate a claim under the collective bargaining if the employee engages in the protected conduct of filing a charge of discrimination with the CCHRO.  Based on this analysis, I have determined that Article 15, Section 10 of the collective bargaining agreement violates Title VII of the Civil Rights Act of 1964, as amended, as applied to Charging Party and any similarly situated employees."  (U. S. Equal Employment Opportunity Commission Determination of Robert L. Sanders, Director, Boston Area Office pp 1-2).  The Union might also have been required to present to the court, information relative to the EEOC Determination in light of the fact that "Disclosure of information obtained by the Commission [EEOC] during the conciliation process will be made in accordance with 706(b) of Title VII and 1601.26 of the Commission's Procedural Regulations." (U. S. Equal Employment Opportunity Commission Determination of Robert L. Sanders,

Director, Boston Area Office pp 2).  Clearly, the Court was either not aware of an EEOC determination against the Union, or else the Court erred in considering the EEOC determination it in its decision.  In light of the fact that the Court included information relative to the CHRO decision, which went against the plaintiff (Ruling on the Defendant's Motion for Summary Judgment pp 3, 6, 7, 8, and 9) and information relative to the Unemployment Compensation ruling that was not in plaintiff's favor either (Ruling on the Defendant's Motion for Summary Judgment p 9).   Had the information regarding the EEOC ruling been disclosed to the Court in any of the documents, up to and including the most recent Objection to Plaintiff's Motion for Corrected Judgment, dated July 11, 2005, it might have given the Court additional information to take into consideration relative to the claims of the plaintiff.  The EEOC Determination would certainly have provided the Court with additional evidence to analyze in accordance with Title VII claims brought by plaintiff.  The standard used by the Court to decide whether or not a motion for summary judgment should be granted, includes the fact that "The court resolved all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. Denied, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505).  If, however,

the Union was granted summary judgment without a requisite analysis from the court, there would be no need to disclose or present information relative to the EEOC Determination. To grant a motion for summary judgment under these circumstances would violate the rights of the nonmoving party.

Relative to the claim that "The doctrine of the law of the case 'posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.'" Aramony v. United Way of America, 254 F.3d 403, 410 (wd Cir. 2001) (quoting In re Crysen/Montenay Energy Co., 226 F.2d 160, 165 n. 5(2d Cir. 2000), cert. Denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001). Defendant claims that the "law of the case:" establishes that the CBA provision at issue was non-discriminatory and non-retaliatory, and the Union is entitled to judgment as a matter of law. Plaintiff finds this statement disingenuous, and further claims that the Union is once again, attempting to circumvent the EEOC Determination against them, which clearly states that "Article 15, Section 10, of the collective bargaining agreement provided that "disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the [CCHRO] arising from the same common nucleus of operative fact.' This clause penalizes an employee by denying that employee the right to arbitrate a claim under the collective

bargaining if the employee engages in the protected conduct of filing a charge of discrimination with the [CCHRO].  Based on this analysis, I have determined that Article 15, Section 10 of the collective bargaining agreement violates Title VII of the Civil Rights Act of 1964, as amended, as applied to Charging Party and any similarly situated employees."  If the Court was in possession of the EEOC Determination, and the Court failed to use it in their Decision on Defendant's Motion for Summary Judgment, then the Court has erred.  If the Union and OPM have intentionally failed to disclose the EEOC Determination to the Court, then they have misrepresented their legal posture to the Court.  Either way, the Court should not grant summary judgment to the Union without taking into consideration all of the relevant case law and Administrative Rulings relative to this case.  Clearly, the Union is now openly failing to disclose information to the Court relative to the EEOC Determination, and the Union is further attempting to obtain a favorable summary judgment ruling on the coat tails of the State, at the expense of the plaintiff's Constitutionally protected rights.

Relative to the claim that Richardson and her Union have agreed not to arbitrate, Richardson and other members became party to a CBA wherein the terms were not bargained or negotiated for by the individual members.  The terms of the contract were standard, and members became party to a contract which had terms that they were not,

individually, at liberty to change.  Under Article 1 of the CBA, it states that "The State of Connecticut herein recognizes the Administrative and Residual Employees Union, as the exclusive representative of the State Employees whose classifications were assigned to the certified unit by action of the Connecticut State Board of Labor Relations."  (Administrative and Residual [P-5] Bargaining Unit Contract Between State of Connecticut and A&R Local 4200-AFT/CFEPE, AFL-CIO, Effective July 1, 1999 Expiring June 30, 2003. p. 1)  According to this contract, the Union is the exclusive representative of the State Employees within a specific classification, and the members are all party to a standard contract which they do not have power to alter or modify.  The plaintiff was a party to a contract on its face, violated Federal Civil Rights Laws.  As such, the Title VII claims against the Union stand under the law of the case doctrine. The Court's holding does not dispose of the Title VII claims against the Union, nor does it dispose of the other claims either, in light of the EEOC ruling.  The EEOC Determination, upholds plaintiff's claim that the Union breached their duty to Fair Representation to her.  The Union is being disingenuous by claiming that "the Union was simply abiding by the terms of a collectively bargained agreement" and citing the Court's Opinion, p. 23, when the Union knows full well, that the Court has erred in failing

to take the EEOC Determination into consideration.  The judgment in this case requires correction, and the plaintiff's Motion for Corrected Judgment should be granted.

**CONCLUSION**

For the foregoing reasons, the Court should grant the Plaintiff's Motion for Corrected Judgment, and deny the granting of summary judgment to the Union.

THE PLAINTIFF
LEONYER RICHARDSON


By_____
Cynthia R. Jennings
Federal Bar No. ct21797
The Barrister Law Group, LLC
211 State Street
Bridgeport, CT 06604
Tel:    203-334-4800
Fax:    203-333-7178
e-mail:  cynthia_jennings_law@yahoo.com

**CERTIFICATION**

This is to certify that on this 31st day of July 2005, I hereby mailed a copy of the

Plaintiff's Reply to Objection to Plaintiff's Motion for Corrected Judgment to:

James M. Sconzo and
Jonathan C. Sterling
JORDEN BURT LLP
175 Powder Forest Drive
Suite 201
Simsbury, CT 06089


Brian A. Doyle, Esq.
35 Marshall Road
Rocky Hill, CT 06067




_____
Cynthia R. Jennings