## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LEONYER M. RICHARDSON          :
  Plaintiff                    :
                         :    Civil No. 3:02CV0625(AVC)
V.                             :
                         :
STATE OF CONNECTICUT, ET AL.   :
  Defendant

### RULING ON THE PLAINTIFF'S MOTION FOR CORRECTED JUDGMENT

This is an action for damages and equitable relief brought in connection with a failed employment relationship. The complaint alleges disparate treatment in employment based on race and retaliation for engaging in protected activity. The action is brought pursuant to 42 U.S.C. §§ 1981 and 1983 and alleges violations of the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, et. seq. at §§ 20003e-2 and 3, and the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. §§ 46a-58(a), 60(a)(1), (4) and (5).

The plaintiff, Leonyer M. Richardson, now moves for a corrected judgment addressing count five of the complaint and clarifying whether the court intended to render judgment as a matter of law in favor of Administrative and Residual Employees Union, Local 4200, CFEPA, AFT, AFL-CIO ("Union"). The issues presented are whether: 1) the Union violated their alleged duty of fair representation; 2) the Union violated Title VII and CFEPA; 3) the Union violated the equal protection clause of the

1

United States Constitution; and, 4) whether the court should have considered the EEOC rulings in its initial ruling.

For the reasons that hereafter follow, the motion for corrected judgment is granted to the extent that the Union is granted judgment as a matter of law.

**FACTS**

Examination of the complaint, affidavits, pleadings, Rule 56(c) statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts.

The plaintiff, Leonyer Richardson, is an African American woman who was employed by the state of Connecticut for many years. In 1981, she began her career as a clerk typist for the Connecticut Department of Environmental Protection ("DEP"). At some point, DEP officials promoted her to the position of fiscal administrative officer. In November of 1997, Richardson left DEP for a fiscal administrative officer position with the Connecticut Office of Policy and Management ("OPM"). Prior to leaving the DEP, one Richard Clifford, Chief of the Bureau of Outdoor Recreation, gave Richardson a written reprimand for allegedly exhibiting "offensive or abusive conduct . . . [toward] co-workers."

On May 30, 2000, Richardson filed her first complaint of discrimination with the state of Connecticut commission on human

rights ("CHRO") against OPM.  The complaint alleged Richardson was the victim of a hate crime because her desk had been "ram shacked" repeatedly.  The complaint also alleged that her supervisors racially discriminated against her by harassing her in various ways on the job.  OPM denied the allegations, and Richardson eventually withdrew her complaint.

On October 6, 2000, Richardson transferred to CHRO, again in the capacity of fiscal administrative officer.  Leanne Appleton, a caucasian woman, was assigned as Richardson's direct supervisor.

On February 22, 2001, Appleton issued Richardson a written warning.  The warning admonished Richardson for violating a direct order prohibiting computer use with another person's user-id and password.  The warning also informed Richardson that Appleton was scheduling a series of meetings to discuss work requirements, and that Richardson had the right to union representation at the meetings.

On April 6, 2001, Appleton once again reprimanded Richardson with a written warning, asserting that Richardson violated a direct order against contacting the comptroller's office, and another order regarding workplace conduct, including unacceptable e-mail, rude telephone calls, and abrupt notes.

On April 30, 2001, Richardson filed her first grievance against Appleton, accusing her of issuing a written warning

without just cause, and of abusive, arbitrary, and discriminatory
conduct.

On July 5, 2001, Richardson filed a second grievance against
Appleton, again accusing her of being abusive, arbitrary, and
discriminatory.  According to Richardson, Appleton had singled
her out with regard to untimely bank deposits and abuse of sick
time.

On July 17, 2001, Appleton issued a third written warning to
Richardson, this time alleging a violation of a directive
requiring Richardson to explain 52 alleged untimely deposits and
her failure to follow comptroller guidelines.

On July 30, 2001, Richardson filed a complaint with CHRO
against CHRO alleging that the actions taken by Appleton were
both discriminatory and retaliatory.  On March 15, 2002, CHRO
dismissed the complaint, finding that "there is no reasonable
possibility that further investigation will result in a finding
of reasonable cause."

On September 6, 2001, Richardson filed a complaint with EEOC
against CHRO.  On September 19, 2001, Richardson filed a third
grievance, accusing Appleton and CHRO staff of continuing "a
pattern of lies, misrepresentations, ostracism, accusations . . .
," and placing a written warning in her personnel file without
regard to her contract rights and for singling her out in an
arbitrary manner.  On October 16, 2001, the then acting executive

4

director of CHRO, Cynthia Watts-Elder, fired Richardson "as a result of her insubordination and offensive conduct towards co-workers and supervisors."

Pursuant to her union contract, Richardson filed a grievance with respect to her job termination.  On October 22, 2001, CHRO held a grievance hearing.  Upon discovering that Richardson had amended her second complaint against CHRO to include an allegation of race discrimination regarding her termination, the Union withdrew its appeal of her grievance, as complaints of unlawful discrimination filed with CHRO are not subject to arbitration under the union contract.

On April 9, 2002, Richardson filed a complaint with CHRO against the Union, alleging that "in withdrawing its request to arbitrate my grievances because I had filed complaints of discrimination and retaliation with the CHRO and the EEOC, the union has discriminated against me . . . ."  The Union claims that Richardson failed to exhaust her administrative remedies, including: 1) appealing the Union's decision not to proceed to arbitration to the representative assembly, or 2) pursuing the grievance to arbitration as an individual.

On September 4, 2002, CHRO dismissed the amended complaint on the grounds that "the Respondent's actions were in accordance with the union contract."

On April 9, 2002, Richardson filed a fourth complaint with

CHRO, this time against OPM, alleging that by executing a
collective bargaining agreement with the Union (which provided
that her discrimination complaints were not arbitrable if she
also filed a CHRO complaint), that "OPM and the union have
discriminated against me." On September 4, 2002, CHRO dismissed
Richardson's complaint against OPM on the grounds that "there is
no reasonable possibility that further investigation could result
in a finding of reasonable cause" because "the Respondent's
actions were in accordance with the union contract."

On April 18, 2000, Richardson filed this lawsuit. On June
14, 2004, all the defendants, except for the Union, filed a
motion for summary judgment. On March 31, 2005, the court
granted the defendant's motion for summary judgment with respect
to counts I-IV. However, the opinion failed to address count V
regarding the complaint's allegations directed towards the Union.

On April 29, 2005, Richardson filed a notice of appeal with
the second circuit court of appeals. Subsequently, on June 20,
2005, Richardson filed a motion for corrected judgment with this
court pursuant to F.R.C.P. 54(b). Furthermore, in "plaintiff's
reply to defendant's objection to plaintiff's motion for
corrected judgment," Richardson offers two new exhibits. Both
exhibits are decisions of the United States equal employment
opportunity commission. The first is a determination against the
Union finding "that Article 15, Section 10 of the collective

6

bargaining agreement[1] violates Title VII of the Civil Rights Act
of 1964, as amended, as applied to Charging Party [Richardson]
and any similarly situated employees." The second determination
is against OPM and contains the same findings as the first
determination against the Union.

On August 4, 2005, the parties agreed that Richardson's
appeal was premature, and eventually executed a "Stipulation
Withdrawing Premature Appeal" which was apparently filed with the
second circuit court of appeals.

## STANDARD

Summary judgment is appropriately granted when the
evidentiary record shows that there are no genuine issues of
material fact and that the moving party is entitled to judgment
as a matter of law. Fed. R. Civ. P. 56(c). In determining
whether the record presents genuine issues for trial, the court
must view all inferences and ambiguities in a light most
favorable to the non-moving party. See Bryant v. Maffucci, 923
F.2d 979, 982 (2d. Cir.), cert. denied, 502 U.S. 849 (1991). A
plaintiff raises a genuine issue of material fact if "the jury
could reasonably find for the plaintiff." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that

---

[1] Article 15, Section 10 provides that "disputes over claimed
unlawful discrimination shall be subject to the grievance
procedure but shall not be arbitrable if a complaint is filed
with the [CHRO] arising from the same common nucleus of operative
fact."

the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

## DISCUSSION

### I.   Breach of Duty of Fair Representation

     The Union claims that they have not breached their duty of fair representation because they were "simply abiding by the terms of a collectively bargained agreement."  The plaintiff makes the conclusory claim that the Union has breached its duty of fair representation, but does not make any further response to the Union's claim.

     "[A] union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith . . . [this rule] applies to all union activity." Airline Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991).  In addition, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness . . . as to be irrational." Id.

Viewed in the light most favorable to the plaintiff, it can not be said that the Union's actions in this case were arbitrary, discriminatory, or in bad faith.  The Union proceeded according to Article 15, Section 10 of the union contract, which states that "disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the [CHRO] arising from the same common nucleus of operative fact."  This court previously found Article 15, Section 10 of the union contract to be valid under the Federal Arbitration Act.  Furthermore, the record is void of any evidence of discrimination or any retaliatory animus on the Union's part.  The Union assisted Richardson in steps 1-3 of the grievance process, then declined to arbitrate because of a contractual provision.  The complaint consists of a conclusory allegation that the Union "violated . . . [their] duty of fair representation . . . ."  There is no evidence to back up this statement.  No reasonable jury could find for the plaintiff given these unsupported claims.

## II.  Title VII and CFEPA Violations Against the Union

The complaint further alleges that the Union "violated section 704 of Title VII, 42 U.S.C. § 2000e-3 [and] C.G.S. §§ 46a-58(a), 60(a)(4) and (5)."  Specifically, the complaint alleges that "because [Richardson] had filed complaints of discrimination and retaliation with the CHRO and the EEOC, the

defendant union has discriminated against Ms. Richardson."  The
Union responds that they did not discriminate against Richardson,
and further that she did not exhaust her administrative remedies.

"In order to establish a claim under Title VII stemming from
a union's breach of its duty of fair representation, a plaintiff
must show (1) that the employer committed a violation of the
collective bargaining agreement, (2) that the union permitted the
violation to go unrepaired, thus, breaching its duty of fair
representation, and (3) that the union was motivated by racial
animus." Coggins v. 297 Lennox Realty Co., No. 96-9062, 1997 WL
138781, at *2 (2d Cir. March 18, 1997)(citing Bugg v.
International Union of Allied Indus. Workers, Local 507, 674 F.2d
595, 598 n.5 (7th Cir. 1982), cert. denied, 459 U.S. 805 (1982)).

Even if the employer in this case committed a violation of
the collective bargaining agreement, the plaintiff can not
satisfy the second prong of this test because the Union did not
breach its duty of fair representation.  The Union proceeded
under a contractual provision, legal under the FAA, which states
that "disputes over claimed unlawful discrimination shall be
subject to the grievance procedure but shall not be arbitrable if
a complaint is filed with the [CHRO] arising from the same common
nucleus of operative fact."[2]  Because the Union did not breach

---

[2] Moreover, the Union claims that Richardson did not exhaust
her administrative remedies under the union contract.  Richardson
failed to respond to this claim.  See Briones v. Runyon, 101 F.3d

its duty of fair representation, it did not violate Title VII.

The plaintiff has also failed to raise a genuine issue of material fact with regard to her CFEPA claim.  Title VII claims and CFEPA claims are generally analyzed under the same framework.  See State v. Commission on Human Rights and Opportunities, 211 Conn. 464, 469-70 (1989).  Thus, if a plaintiff fails to raise a genuine issue of material fact with regard to a violation of Title VII, she will not be able to raise a genuine issue of material fact with regard to a violation of CFEPA.  The CFEPA claim therefore fails for the same reasons the Title VII claim fails.

## III.  §§ 1983 and 1981 Claims

The complaint further alleges that "[t]he union's actions violated Ms. Richardson's rights to be treated the same as white citizens as protected by 42 U.S.C. § 1981, her property rights to continued employment and her rights to due process and equal protection of the laws as protected by the Fourteenth Amendment to the U.S. Constitution as enforced through 42 U.S.C. § 1983 . . . ."  The Union denies liability under either §§ 1981 or 1983.

As the court stated in its previous ruling on the defendant's motion for summary judgment, the elements of a § 1983

287, 289 (2d Cir. 1996)("Under Title VII, a litigant must exhaust available administrative remedies in a timely fashion.").  In particular, Richardson could have appealed the Union's decision not to proceed to the representative assembly, or she could have pursued the grievance to arbitration as an individual.

11

claim parallel those of a Title VII claim.  "The elements of one are generally the same as the elements of the other and the two must stand or fall together."  See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).  Because Richardson has failed to raise a genuine issue of material fact as to her Title VII claim against the Union, both her §§ 1983 and 1981 claims fail.

Furthermore, the § 1981 claim fails because "[t]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).  Moreover, "[most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 of the Equal Protection Clause . . . and the factors justifying summary dismissal for termination of [Richardson's] employment equally support the summary dismissal of [her] claims for termination brought under 42 U.S.C. §§ 1981 and 1983.  Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).  Therefore, because Richardson has failed to raise a genuine issue of material fact in regards to her Title VII claim, both her §§ 1981 and 1983 claims must fail as well.

## IV.  The EEOC determinations

The complaint further alleges that "the court should not

grant summary judgment to the Union without taking into consideration all of the relevant case law and Administrative Rulings relative to this case [including the EEOC rulings]."[3] The Union claims that the EEOC rulings are not binding on the court, and that summary judgment should be granted.

The EEOC rulings that Richardson now claims are central to this case have no binding effect on this court. <u>See</u> <u>Green v. Harris Publications</u>, 331 F.Supp.2d 180, 195 (S.D.N.Y. 2004)("Even assuming the EEOC's conclusion that plaintiff was constructively discharged because of his race is admissible, the EEOC determination is not binding, and on the record before the Court, no reasonable jury could find a constructive discharge."). Furthermore, the court fails to see why Richardson did not introduce the EEOC rulings earlier in her case if she considered them so important to proving the complaint's allegations. They became available in April 2003, while this court did not enter its initial ruling until March 31, 2005. Nonetheless, the EEOC rulings do not create a genuine issue of material fact. The court therefore grants the motion for corrected judgment to the extent that the Union is granted judgment as a matter of law.

---

[3] Defendant OPM motioned to strike portions of the plaintiff's reply memorandum in support of its rule 54 motion. Apparently, Richardson wants the court to reexamine its ruling granting summary judgment to OPM in light of the newly introduced EEOC rulings. The court declines to reexamine its initial judgment, as Rule 54(b) is not a proper basis for modifying such a judgment.

## CONCLUSION

For the reasons stated herein, the motion for corrected judgment is granted to the extent that the Union is granted judgment as a matter of law.

It is so ordered, this 23rd day of November 2005 at Hartford, Connecticut.

_____
Alfred V. Covello
_____ United States District Judge